AMERICAN BUSINESS OVERSEAS,
Plaintiff,

v.

METHODS RESEARCH PRODUCTS,
INC., Defendant.

No. G82–407 CA5.

United States District Court,
W.D. Michigan, S.D.

June 13, 1983.

A.C. Murphy, Thomas Meagher, McKay, Murphy & Guerre, P.C., Lansing, Mich., for plaintiff.

Michelle E. Vocht, Lynn H. Shecter, Shecter & Vocht, P.C., Birmingham, Mich., for defendant.

MILES, Chief Judge.

This diversity action involves a contract between the plaintiff, American Business Overseas ("ABO"), and the defendant, Methods Research Products, Inc. ("Methods"), under the terms of which the defendant was to package a certain quantity of "FAF rat glue." The goods were to be shipped directly from the defendant's place of business to a Saudi Arabian concern known as Agricultural Development Stores ("ADS"). During shipment, it is alleged, the tubes in which the defendant had packaged the glue leaked rendering the goods defective. On the basis of this claim, the plaintiff alleges in its complaint breach of express warranties, breach of implied warranties of merchantability and fitness for a particular purpose, negligence, and breach of contract.

Originally the plaintiffs brought suit in Ingham County Circuit Court; however, the defendants removed the action to this court under the provisions of section 1441 and 1446 of Title 28 of the United States Code. Now before the court is the defendant's motion to dismiss for lack of personal jurisdiction or, in the alternative, transfer venue.

In support of its motion defendant Methods has submitted the affidavit of its president, Ed Parker, which states that the defendant is a Pennsylvania corporation with its office in Pennsylvania. It maintains no sales people, bank accounts or property in Michigan and is not qualified to do business in the state. At present, approximately one-half of one percent of its business comes from Michigan customers. Annual gross receipts are approximately $1.5 million, and the price of the underlying contract which is the subject of this suit was $6,000. In addition, Methods maintains that it did not perform the entire contract. It subcontracted part of it to Visual Packaging of Philadelphia, Pennsylvania.

The plaintiff submits the affidavit of its vice-president and treasurer, Thomas Cramer. He states that ABO is a Michigan corporation which engages in international trade. During 1980 and 1981 ABO contracted with ADS to ship stated quantities of "FAF rat glue," an adhesive used to trap rats, packaged in individual tubes. Because the glue is manufactured in large containers, ABO sought a contract packager to put the glue in tubes. According to affiant Cramer, ABO consulted a nationally distributed industrial directory, "Thomas' Register of Manufacturers," in which defendant Methods had placed an advertisement. Based on this advertisement, ABO contacted Methods and negotiations ensued by telephone and mail.

Although the plaintiff initiated the calls and correspondence, the parties continued their exchange for several months. Cramer's affidavit also indicates that Methods mailed ABO samples of its product, made specific representations as to the product's capabilities, and furnished ABO with price quotations which it requested. In September 1981 the plaintiff sent the defendant a purchase order with attached instructions and conditions. Ed Parker signed the purchase order agreeing to its conditions on behalf of defendant Methods.

In his affidavit, Cramer also states that during the execution of the contract Parker wrote him soliciting more business from ABO. Attached to the letter is a photocopy of a letter which appears to have been written by Parker and supports the affiant's position. The court, having decided this question solely on the basis of written submissions, has considered the pleadings and affidavits in the light most favorable to the plaintiff. The plaintiff need only put forth a *prima facie* showing of jurisdiction in this instance. *Welsh v. Gibbs*, 631 F.2d 436 (6th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981).

In an action whose subject matter jurisdiction is based upon diversity of citizenship, a federal court must look to state law to determine the extent of its personal jurisdiction. *Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1179 (6th Cir.1975). Therefore, the instant motion raises two separate issues: (1) whether state law provides for personal jurisdiction on these facts, and (2) whether assertion of jurisdiction in this instance is consistent with due process. *Hertzberg & Noveck v. Spoon*, 681 F.2d 474, 477 (6th Cir.1982).

Michigan law clearly provides for the assertion of personal jurisdiction in this case. The state's "long-arm" statute provides in pertinent part that

The existence of any of the following relationships between an individual ... and the state shall constitute a sufficient basis of jurisdiction to enable a court ... to exercise limited personal jurisdiction over the individual ....

(1) The transaction of *any* business within the state ....

Mich.Comp.Laws § 600.705(1) (emphasis supplied). Michigan courts have construed the statute to extend jurisdiction to the farthest limits permitted under the due process clause. *Sifers v. Horen*, 385 Mich. 195, 199, 188 N.W.2d 623, 624 (1971); *Parish v. Mertes*, 84 Mich.App. 336, 339, 269 N.W.2d 591, 593 (1978). Transaction of *"any* business" includes "each" and "every" business contact, and even the "slightest" business. *Sifers v. Horen*, 385 Mich. at 199 n. 2, 188 N.W.2d at 624 n. 2. Therefore, the jurisdictional issue presented turns on an interpretation of due process.

In *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir.1968), the court of appeals set out a three-part test to determine whether a nonresident company transacts business within the forum state for the purposes of due process.

First, the defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the

forum to make the exercise of jurisdiction over the defendant reasonable.

401 F.2d at 381. This standard has been accepted repeatedly by this and other circuits as the most appropriate means of assessing a defendant's contacts with the forum. *See, e.g., Chattanooga Corp. v. Klingler,* 704 F.2d 903, at 905–906 (6th Cir.1983); *First National Bank v. J.W. Brewer Tire Co.,* 680 F.2d 1123, 1125–26 (6th Cir.1982).

The court finds that Methods has purposely availed itself of acting or causing a consequence in Michigan. The negotiations between ABO and Methods spanned a considerable period of time, at least ten months, before ABO submitted its purchase order, the terms and conditions of which Methods consented to in September 1981. Therefore, there is no question that the defendant knowingly entered into a contract with a Michigan corporation. *See In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 227 (6th Cir.1972); *Chrysler Corp. v. Traveleze Industries, Inc.,* 527 F.Supp. 246, 250 (E.D.Mich.1981). Although the plaintiff initiated the discussions between the parties, the defendant subsequently telephoned and corresponded with ABO offices in Michigan. *See Parish v. Mertes,* 84 Mich.App. at 341, 269 N.W.2d at 594.

■ Through its listing in Thomas' Register, Methods was also advertising in Michigan. As the Cramer affidavit states, on the basis of this listing ABO contacted Methods. Although a single advertisement in a national publication is not, by itself, sufficient to confer personal jurisdiction over the defendant advertiser in all states, the court must look to the quality of contacts which follow from the advertisement. In *Kiefer v. May,* 46 Mich.App. 566, 208 N.W.2d 539 (1973), the defendant had placed an advertisement to sell a car in a national publication which circulated in Michigan. The plaintiff responded to the advertisement by calling the defendant. During their conversation, the defendant made certain representations about the car. The plaintiff then had the car picked up in Arizona and taken to Michigan. Upon examining the car in Michigan, the plaintiff discovered that the car did not conform to the defendant's representations. The court of appeals found personal jurisdiction over the defendant on the basis of the advertisement and stated that a single contact can be sufficient to support jurisdiction. *Id.* at 571, 208 N.W.2d at 541.

■ In the case at bar the defendant sought to attract business from all over the country including Michigan. It then negotiated with a Michigan corporation, ABO, for a considerable period of time before entering into a contract. The court believes that Methods' advertisement, coupled with the ensuing relationship between it and ABO, satisfies the purposeful availment requirement of due process.

■ The defendant attempts to distinguish the case at bar from the existing caselaw on several grounds. First, it argues that the contract which is the subject matter of this suit only involved $6,000. The amount of consideration alone, however, is not a significant indicator of one's contacts with a forum. Not only is it difficult for a court to draw lines at dollar amounts, the consequences of a transaction may have no relationship to the amount of consideration. In some instances the size of the transaction may serve to ascertain the quality of contacts; however, it is not determinative. Moreover, on these facts the defendant contemplated a continuing relationship with the plaintiff because it solicited additional business while performing the contract. Whether the contract is for expensive aircraft equipment, *In-Flight Devices Corp.,* 466 F.2d at 250, or one automobile, *Kiefer,* 46 Mich.App. at 571, 208 N.W.2d at 541, jurisdiction is not necessarily affected by the amount of money involved. What is critical on these facts is that Methods entered into a commercial transaction with a Michigan corporation out of which this action for breach of contract and warranty grew. *See In-Flight Devices Corp.,* 466 F.2d at 250; *Microelectronic Systems Corp. v. Bamberger's,* 434 F.Supp. 168, 171 (E.D.Mich.1977).

■ Second, Methods notes that only a small percentage, approximately one-half of one percent, of its business comes from Michigan firms. It is well-settled, however, that the defendant need not have a continuing relationship with the forum to support an assertion of personal jurisdiction. A single contact with the forum is sufficient even though the defendant is not present in the forum. *National Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1137 (6th Cir.1982); *Mad Hatter, Inc. v. Mad Hatters Night Club Co.*, 399 F.Supp. 889, 891 (E.D.Mich.1975).

The defendant's third argument to distinguish these facts is that the product, its tube filled with rat glue, never entered Michigan. This argument, however, ignores the realities of commercial transactions and the nature of the purposeful availment requirement. Simply because the goods were shipped overseas directly from the defendant's place of business and not to Michigan does not make the consequences to Michigan any less. Methods still negotiated by telephone and mail with a Michigan corporation, contracted with such a company, and later solicited business from it. Moreover, the defendant did send some samples of its product to Michigan. Therefore, whatever representation or warranty Methods made with respect to its product, it did so in the State of Michigan. In sum, the contractual relationship between the parties led to consequences in Michigan regardless of the amount of money involved, the extent of defendant's Michigan business, or the location of the product.

■ Having found defendant Methods to have purposely availed itself of Michigan, the court must next consider whether the cause of action arose out of the defendant's Michigan contacts. The contractual relationship between the parties is the basis for the defendant's contact with the forum state, and the plaintiff is suing based on, *inter alia*, the defendant's alleged nonperformance of certain aspects of the contract. Therefore, it is clear that this second requirement is satisfied.

The third factor set out in *Southern Machine* requires that the exercise of jurisdiction on these facts be reasonable. In a commercial transaction such as the one at bar, there should be no doubt as to the reasonableness of asserting jurisdiction. Given the nature of the transaction, Methods could "reasonably anticipate being haled into court" in Michigan, and assertion of jurisdiction does not offend "traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■ The defendant also moves for a change of venue pursuant to section 1404(a), Title 28, United States Code, on the basis of *forum non conveniens*. It contends that the Eastern District of Pennsylvania would be a more appropriate forum. Under *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the defendant carries a heavy burden to disturb the plaintiff's selection of a forum. *See Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955). The court believes that the defendant has failed in its proof. Methods claims that the factories at which the disputed work was performed are in Pennsylvania; however, it does not indicate why an on-site inspection would be necessary in this case. Methods also states that its records are in Pennsylvania and that trial in Michigan would require its employees to be away from work for long periods of time. These factors, however, would apply equally to the plaintiff were trial held in Pennsylvania.

Two factors arguably militate in favor of transferring venue. First, the defendants claim that a number of witnesses, in particular employees of Visual Packaging, are not within the subpoena power of the court. Methods, however, does not state how many witnesses are involved, the extent of their testimony, or their current residences. Second, the parties appear to agree that Pennsylvania law applies in this case. Although choice of law is a consideration in these cases, the court does not regard it to be significant. This contro-

**6**

sy involves a straight forward commercial transaction, and the plaintiff's theories are based on contract, warranty and negligence. Moreover, the defendant cites the court to no consequence of applying Pennsylvania law as opposed to Michigan law. The court is not persuaded that these factors are sufficient to override the plaintiffs choice of a forum.

### ORDER

Based on the above discussion, the defendant's motion to dismiss or, in the alternative, transfer venue is hereby DENIED.

IT IS SO ORDERED.