WITBECK v BILL CODY'S RANCH INN

HAPNER v SOLIS APPARATUS MANUFACTORIES LTD

Docket Nos. 75650, 77913. Argued January 13, 1987 (Calendar Nos. 4-5). Decided August 24, 1987.

Gary Witbeck, as next friend of Michelle Witbeck, a minor, brought an action in the Wayne Circuit Court against Bill Cody's Ranch Inn, a Wyoming corporation, and others, seeking damages for personal injuries suffered by Michelle as a result of a riding accident at the defendant's resort in Wyoming. The court, Marvin R. Stempien, J., denied the defendant's motion for accelerated judgment, finding that it had limited personal jurisdiction over the defendant. The Court of Appeals, CYNAR and DEMING, JJ., and MACKENZIE, P.J. (concurring in part and dissenting in part), affirmed (Docket No. 79666). The defendant appeals.

DeAnn Hapner and Benjamin Hapner, Illinois residents, brought an action in the Washtenaw Circuit Court against Solis Apparatus Manufactories Ltd., a Swiss corporation, for injuries suffered by DeAnn in Michigan, while using a hair dryer manufactured by the defendant and which was purchased in Illinois. The court, William F. Ager, J., granted accelerated judgment for the defendant for lack of jurisdiction, finding insufficient contacts with the State of Michigan. The Court of Appeals, R. M. MAHER, P.J., and RILEY and RYAN, JJ., reversed in an opinion per curiam (Docket No. 26321). The Supreme Court reversed and remanded the case to the trial court for further proceedings, 404 Mich 160 (1978). On remand, the trial court found insufficient contacts to maintain jurisdiction. The Court of Appeals, GRIBBS, P.J., and BRONSON and SHEPHERD, JJ., affirmed in an unpublished opinion per curiam (Docket No. 72393). The plaintiffs appeal.

In an opinion by Justice GRIFFIN, joined by Justices LEVIN,

REFERENCES

Am Jur 2d, Courts §§ 21, 22, 87 et seq.

Am Jur 2d, Foreign Corporations §§ 466 et seq.

See the annotations in the Index to Annotations under Foreign Corporations.

BRICKLEY, CAVANAGH, and BOYLE, with Chief Justice RILEY participating in *Witbeck* only, the Supreme Court *held:*

The exercise of long-arm jurisdiction over foreign corporations must comport with the principles of due process and is to be decided case by case. In each of these cases, because the proofs are inadequate to demonstrate that the defendant purposefully availed itself of the privilege of conducting activities in Michigan, the exercise of long-arm jurisdiction would violate the protection accorded nonresidents by the Due Process Clause of the federal constitution.

1. In order for a state to obtain long-arm jurisdiction over a nonresident corporate defendant, the defendant purposefully must have established minimum contacts in the forum state in such a way that the maintenance of a suit will not offend traditional notions of fair play and substantial justice. Critical to due process analysis is the foreseeability that the defendant's conduct and connection with the forum state were such as would give rise to a reasonable anticipation of being haled into court in that state. In each case, it is essential that there be some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum state so as to invoke the benefits and protections of its laws. The contacts may not be merely random, fortuitous, or attenuated, or result from the unilateral activity of another party or a third person. The focus is primarily on the defendant. Once the purposeful-availment threshold has been satisfied, it is necessary to determine, case by case, whether the exercise of personal jurisdiction would comport with the principles of due process.

2. In *Witbeck,* the defendant's conduct did not constitute the requisite minimum contacts with the State of Michigan. In *Hapner,* the evidence adduced by the plaintiffs on remand was insufficient to demonstrate that the defendant had purposefully availed itself of the privilege of conducting activities within Michigan.

*Witbeck,* reversed and remanded.

*Hapner,* affirmed.

Justice ARCHER, concurring in *Witbeck,* but dissenting in *Hapner,* stated that the proofs now offered by the plaintiffs in *Hapner* establish jurisdiction and create a question of fact for a jury; and thus should require reversal.

147 Mich App 587; 383 NW2d 253 (1985) reversed.

COURTS — LONG-ARM JURISDICTION — FOREIGN CORPORATIONS — DUE
    PROCESS.

In order for a state to obtain long-arm jurisdiction over a nonresi-

dent corporate defendant, the defendant must purposefully establish minimum contacts in the forum state in such a way that the maintenance of a suit will not offend traditional notions of fair play and substantial justice; in each case, it must be shown that the defendant corporation purposefully availed itself of the privilege of conducting activities within the forum state so as to have invoked the benefits and protections of its laws and so as to reasonably have anticipated being haled into court in the forum state (US Const, Am XIV; MCL 600.715; MSA 27A.715).

*Nora, Hemming, Essad & Polaczyk, P.C.* (by *John J. Nora* and *Geno D. Salomone*), for plaintiff Witbeck.

*Goodman, Eden, Millender & Bedrosian* (by *William H. Goodman, Robert A. Koory,* and *Sharon Mills*) for plaintiffs Hapner.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Michael L. Updike*) for defendant Bill Cody's Ranch Inn.

*Butzel, Keidan, Simon, Myers & Graham* (by *Richard P. Saslow* and *Linda G. Burwell*) for defendant Solis Apparatus Manufactories Ltd.

GRIFFIN, J. These cases, one a personal injury action and the other a products liability suit, require that we examine the reach of Michigan's long-arm statute in asserting limited personal jurisdiction over nonresident corporations, MCL 600.715; MSA 27A.715.

Because the proofs are inadequate in each instance to demonstrate that the defendant "purposefully availed" itself of the privilege of conducting activities within Michigan, we conclude that exercise of long-arm jurisdiction in these cases would violate protection accorded nonresidents by the Due Process Clause of the federal constitution.

I

FACTS AND PROCEDURAL HISTORY

*A. WITBECK*

In August, 1983, Michelle Witbeck, then age twelve, fell from a horse she was riding while on vacation with her parents at a resort in Wyoming operated by Bill Cody's Ranch Inn. An employee of the ranch coaxed Michelle to remount the horse, despite her protest. She fell a second time and sustained injuries for which damages are sought in this action filed in Wayne Circuit Court against the ranch and other defendants not involved in this appeal.

The Witbecks had decided to vacation at the ranch following a visit to the Birmingham, Michigan, office of the American Automobile Association. An agent of the AAA recommended the ranch to the Witbecks after reviewing with them a regional tour book covering western states published by the AAA. The tour book included an advertisement for the ranch and identified the ranch as a participant in the AAA's "official appointment service" with a four-diamond rating. Thereafter, the Witbecks placed a phone call from Michigan to the ranch to make inquiries and arrangements for their stay. The ranch followed up the conversation by mailing a brochure to the Witbecks. There was no other contact between the ranch and the Witbecks until they arrived at the defendant's Wyoming establishment. Following the vacation, the family received a direct mail advertisement from the ranch.

In circuit court, defendant ranch moved for accelerated judgment, claiming lack of personal jurisdiction; the motion was denied. Thereafter, a

divided panel of the Court of Appeals affirmed, and this Court granted leave to appeal.

*B. HAPNER*

In December, 1970, plaintiff Benjamin Hapner, an Illinois resident, purchased in Chicago from Ralph Teresi, his longtime friend and barber, a portable "professional" hair dryer as a Christmas gift for his daughter, plaintiff DeAnn Hapner. At that time, DeAnn was a high school senior living at home with her parents in Chicago. She used the dryer regularly, and then took it with her in September, 1971, to Ann Arbor where she enrolled and attended the University of Michigan.

Several months later, when she noticed a noise in the dryer, she took it home with her to Chicago. Her mother returned the dryer to the Chicago barber to have it repaired. In a few days, he brought it back and said that the problem had been "taken care of." DeAnn again took the dryer to Ann Arbor where on January 28, 1972, she was injured by electrical shocks and suffered burns on both hands when the dryer came apart.

In February, 1973, the Hapners brought suit in Washtenaw Circuit Court naming as defendants Ralph Wehr, a Chicago distributor, and Rolf Brauchli, Inc., an Illinois importer-wholesaler of hair dryers. The Hapners did not sue their barber friend, from whom the dryer had been purchased. The case against Ralph Wehr, the distributor from whom the barber obtained the dryer, was dismissed by the trial court for lack of personal jurisdiction.

Thereafter, on October 11, 1974, plaintiffs amended their complaint and added as defendant, Solis Apparatus Manufactories Ltd., the Swiss manufacturer of the hair dryer.

Solis moved for accelerated judgment, asserting that the Michigan court lacked personal jurisdiction. The motion was granted by the trial court in an opinion dated September 12, 1975. However, the Court of Appeals reversed. 71 Mich App 263; 247 NW2d 375 (1976). On appeal, a majority of this Court concluded that jurisdiction over Solis was lacking on the facts that had been adduced. However, the Court remanded the case to the trial court for "further proceedings with leave to the plaintiff to adduce further proofs regarding the extent of Solis' availment of the privilege of conducting its activities in this state." 404 Mich 160, 170; 273 NW2d 822 (1978) (opinion of LEVIN, J.).

On remand, plaintiffs offered for the trial court's consideration the following additional items of evidence: (1) a deposition taken March 24, 1980, of Alfred Schibli, who was hired as marketing director of Solis in June, 1972, approximately five months after plaintiff DeAnn was injured; (2) a deposition taken December 8, 1980, of William Kraft, an investigator employed by the law firm representing plaintiffs; (3) an affidavit dated February 3, 1976, by Lorraine Kolton, an investigator employed by the law firm representing plaintiffs; and (4) written answers to interrogatories, dated February 4, 1976, which were given by defendant Brauchli, the Illinois importer-wholesaler.

Once more, the trial court found that contacts of the Swiss manufacturer with Michigan were insufficient to support personal jurisdiction, and the case was again dismissed as to Solis. This time the Court of Appeals affirmed the trial court's ruling that it lacked personal jurisdiction over defendant Solis.[1]

---

[1] The Court of Appeals affirmed the accelerated judgment for Solis on the basis of the plaintiffs' failure "to produce any direct evidence of a marketing or distribution system prior to the accident of 1972 or

Now, more than fifteen years after the case was commenced, it is here again for review. The issue this time, as before, is whether the Michigan trial court has personal jurisdiction over Solis. The other defendant, Brauchli, is not involved in this appeal.

II

There is no claim that the defendants in these appeals, one a Swiss corporation and the other a Wyoming corporation, are subject to general personal jurisdiction in Michigan. The assertion of general personal jurisdiction over a corporate defendant is authorized by statute if the corporation consents thereto, if it is incorporated under the laws of Michigan, or if it carries on a continuous and systematic part of its general business within the state. MCL 600.711; MSA 27A.711.

Plaintiffs, however, contend that jurisdiction exists pursuant to Michigan's long-arm statute which extends limited personal jurisdiction to out-of-state defendants on the basis of specific acts or contacts with Michigan.[2]

filing of the suit in 1974 which could support the conclusion that Solis purposefully availed itself of the privilege of conducting activities within Michigan." *Hapner v Rolf Brauchli, Inc,* unpublished opinion per curiam of the Court of Appeals, decided September 21, 1984 (Docket No. 72393), p 5.

[2] MCL 600.715; MSA 27A.715 provides as follows:

The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of any real or tangible personal property situated within the state.

We find it unnecessary to consider questions of statutory construction because we conclude that under the circumstances of each of these cases the exercise of long-arm jurisdiction would violate the Fourteenth Amendment to the federal constitution.[3]

The Due Process Clause of the Fourteenth Amendment "does not contemplate that a state may make binding a judgment in personam against an individual or a corporate defendant with which the state has no contacts, ties, or relations." *Int'l Shoe Co v Washington,* 326 US 310, 319; 66 S Ct 154; 90 L Ed 95; 161 ALR 1057 (1945). The "constitutional touchstone" is whether the defendant purposefully established "minimum contacts" in the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Id.,* 316. *Burger King Corp v Rudzewicz,* 471 US 462, 474; 105 S Ct 2174; 85 L Ed 2d 528 (1985).

The foreseeability of causing injury in another state is not a "sufficient benchmark" for exercising

---

(4) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

[3] In construing Michigan's statute, some courts have concluded that its reach is coextensive with due process tests laid down by the United States Supreme Court. See, e.g., *Kriko v Allstate Ins Co of Canada,* 137 Mich App 528, 531; 357 NW2d 882 (1984), *McGraw v Parsons,* 142 Mich App 22, 25; 369 NW2d 251 (1985), lv den 423 Mich 860 (1985), *Speckine v Stanwick Int'l, Inc,* 503 F Supp 1055 (WD Mich, 1980), *Herman Miller, Inc v Mr Rents, Inc,* 545 F Supp 1241 (WD Mich, 1982), and *Subacz v Town Tower Motel Corp,* 567 F Supp 1308 (ND Ind, 1983). This conclusion is based upon a statement made in *Sifers v Horen,* 385 Mich 195, 198; 188 NW2d 623 (1971), that the long-arm statute "represents an attempt on the part of the Michigan legislature to expand to its full potential *limited* personal jurisdiction of Michigan courts over nonresidents." (Emphasis in the original.) However, the *Sifers* Court also declared that its holding rested upon the "exercise [of] jurisdiction *to the extent indicated in the statute* . . . ." *Id.* (Emphasis supplied.)

personal jurisdiction over an out-of-state defendant who has not consented to suit there. *World-Wide Volkswagen Corp v Woodson,* 444 US 286, 295; 100 S Ct 559; 62 L Ed 2d 490 (1980); *Khalaf v Bankers & Shippers Ins Co,* 404 Mich 134, 145; 273 NW2d 811 (1978). Rather, "the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into Court there." *World-Wide Volkswagen Corp, supra,* 297.

In determining when a foreign defendant should reasonably anticipate being "haled into court" in the forum state, the Supreme Court has provided this guidance:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. [*Hanson v Denckla,* 357 US 235, 253; 78 S Ct 1228; 2 L Ed 2d 1283 (1958).]

This "purposeful availment" requirement insures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, *Keeton v Hustler Magazine, Inc,* 465 US 770, 774; 104 S Ct 1473; 79 L Ed 2d 790 (1984); *World-Wide Volkswagen Corp, supra,* or as the result of the "unilateral activity of another party or a third person," *Helicopteros Nacionales De Columbia, SA v Hall,* 466 US 408, 417; 104 S Ct 1868; 80 L Ed 2d 404 (1984).

After considering the meaning of "purposeful

availment" in terms of contacts with Michigan, this Court, speaking through Justice LEVIN, has said:

> A "purposeful availment" is something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can be properly regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities. The defendant will have reason to foresee being "haled before" a Michigan court. [*Khalaf v Bankers & Shippers Ins Co, supra,* 153-154.]

We note that the focus of due process analysis is primarily on the defendant, rather than the plaintiff. *Rush v Savchuk,* 444 US 320, 332; 100 S Ct 571; 62 L Ed 2d 516 (1980). "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state." *Burger King, supra,* 475, citing *McGee v Int'l Life Ins Co,* 355 US 220, 223; 785 S Ct 199; 2 L Ed 2d 223 (1957) (emphasis in the original).

We recognize that jurisdiction may not be avoided merely because the defendant has not physically entered the forum state:

> Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently

rejected the notion that an absence of physical
contacts can defeat personal jurisdiction there.
[*Burger King, supra,* 476. Citations omitted.]

Even if it can be established that contacts with
the forum state are sufficient to demonstrate pur-
poseful availment, still the requirements of due
process may not be fulfilled.[4] Once the purposeful-
availment threshold has been satisfied, it then
becomes necessary to determine whether the exer-
cise of personal jurisdiction, if based on those
contacts and weighed in light of other factors,
would comport with "notions of fair play and
substantial justice." *Int'l Shoe Co, supra,* 316.
"Other factors" to be weighed in appropriate cases
would include "the burden on the defendant," "the
forum State's interest in adjudicating the dispute,"
"the plaintiff's interest in obtaining convenient
and effective relief," "the interstate judicial sys-
tem's interest in obtaining the most efficient reso-
lution of controversies," and the "shared interest
of the several States in furthering fundamental
substantive social policies . . . ." *World-Wide
Volkswagen Corp, supra,* 292.

Whether the exercise of long-arm jurisdiction
comports with due process requirements is a ques-
tion which must be decided on a case-by-case basis.
As the Supreme Court stated in *Int'l Shoe Co,
supra,* 319:

[T]he criteria by which we mark the boundary
line between those activities which justify the
subjection of a corporation to suit, and those which
do not, cannot be simply mechanical or quantita-
tive. [See also *Woods v Edgewater Amusement
Park,* 381 Mich 559, 569; 165 NW2d 12 (1969).]

---

[4] In *Burger King, supra,* 481-482, the Supreme Court made clear
that whether a defendant had "purposeful connection to the forum" is
a "threshold" question.

### III

Michelle Witbeck's accident took place at the defendant's resort facility, a "dude ranch" located in Wyoming. The ranch is a Wyoming corporation, and at all relevant times it had no offices or facilities outside Wyoming. It had never registered to do business in Michigan, and it had no employees in this state. Furthermore, the ranch had no specific marketing plan aimed at prospective customers in Michigan. It had engaged in no special advertising directed solely at Michigan. Only a very small percentage of its customers had come from Michigan. Its sole contact with customers or potential customers outside the immediate Cody, Wyoming, area had been through recommendations made by organizations such as the American Automobile Association and advertisements placed in travel guides such as the AAA "Tour Guide." The ranch accepted telephone reservations from out of state; it mailed brochures to its customers in other states and, upon request, to potential customers.

Although the accident happened in Wyoming, and the business activities of defendant, by their very nature, were confined to Wyoming, plaintiffs nevertheless point to the fact that their decision to vacation at the ranch was made in Michigan. Plaintiffs rely upon the following "contacts" as the basis for their jurisdictional claim: (1) the ranch's advertisement in the nationally distributed AAA regional tour guide, (2) the ranch's participation in AAA's nationwide "official appointment service," (3) the ranch's interstate telephone conversation with the Witbecks, followed up by the mailing of a brochure describing the ranch's facilities, and (4) the ranch's posting of a letter to the Witbecks

more than three months after plaintiff's injuries were sustained.[5]

We conclude that these acts by the defendant, whether considered separately or in combination, do not constitute requisite "minimum contacts" with the State of Michigan so as to justify maintenance of this suit under the federal Due Process Clause.

We first examine whether the defendant's advertisement in the AAA regional tour guide can be deemed a "substantial connection" with Michigan. *Burger King, supra,* 475. It is clear that a single advertisement in a national publication does not, by itself, constitute "purposeful availment" of the forum state. See, e.g., *Bolger v Dial-A-Style,* 159 Colo 44; 409 P2d 517 (1966); *Erlanger Mills, Inc v Cohoes Fibre Mills, Inc,* 239 F2d 502 (CA 4, 1956). If the rule were otherwise, each advertiser in any nationally distributed publication would be subject automatically to the jurisdiction of each of the states in which the publication is distributed. *Buckley v New York Times Co,* 338 F2d 470 (CA 5, 1964); *Insull v New York, World-Telegram Corp,* 273 F2d 166 (CA 7, 1959).

Rather, "the court must look to the quality of contacts which follow from the advertisement." *American Business Overseas v Methods Research Products,* 593 F Supp 1, 4 (WD Mich, 1983). In the instant case, there were no extensive negotiations between the parties in Michigan which followed placement of the advertisement in the tour guide. Cf. *American Business Overseas, supra.* Plaintiff's family made only a single telephone call from Michigan to Wyoming and spoke with a ranch

---

[5] The post-accident follow-up letter is irrelevant to the jurisdictional question, having obviously played no role in the decision of plaintiff's family to go to the ranch.

employee.[6] During that telephone conversation, the Witbecks learned that they would be entitled to a package rate, that because their trip was imminent they would not have to send in a deposit, and that the availability of accommodations would be guaranteed. The ranch did not negotiate for services to be performed in Michigan, cf. *Sifers v Horen, supra,* nor for the sale of a product to be brought into Michigan, cf. *Kiefer v May,* 46 Mich App 566; 208 NW2d 539 (1973).

Moreover, the decision to advertise in the AAA western states regional tour book was not a decision under defendant's exclusive control. The regional tour book was produced by AAA at its headquarters in Virginia for distribution by its affiliates, such as the Automobile Club of Michigan. Field representatives of AAA conduct a nationwide search for accommodations which meet AAA standards. If an establishment is selected and approved by the AAA for listing, it becomes eligible for the association's "official appointment service." That, in turn, entitles the approved establishment, for a "modest annual fee," to display the AAA emblem on its premises and to use the emblem in advertising. There is no evidence that the ranch advertised independently of AAA in Michigan or that the ranch made regular contact through a salesperson or agent located in Michigan.[7] Cf. *General Turbine*

[6] This fact is in dispute. Defendant ranch claims that no telephonic reservations were made by the Witbecks and that no brochure was sent in response to the alleged call. However, for purposes of this appeal from an order denying a motion for accelerated judgment, we accept, as true, all well-pled allegations of the plaintiffs-appellees, together with reasonable conclusions that may be drawn from these allegations. *Bielski v Wolverine Ins Co,* 379 Mich 280; 150 NW2d 788 (1967).

[7] Neither AAA nor the Automobile Club of Michigan was authorized to take reservations on behalf of the ranch or to perform any other functions which might be construed as establishing a principal-agent relationship.

*Corp v Helwig Carbon Products, Inc,* 29 AD2d 1047; 289 NYS2d 912 (1968).

As noted earlier, the telephone call to Wyoming was placed by a Michigan resident for the purpose of requesting that a service be performed in Wyoming, not Michigan. Accordingly, it cannot be said that the phone call established a "substantial connection" with Michigan; quite to the contrary, its effect was to cause Michigan residents to *leave* the state and to go to Wyoming. See *Speckine v Stanwick Int'l, Inc,* 503 F Supp 1055, 1059 (WD Mich, 1980).

If personal jurisdiction were to be based upon a single phone call, of course, such a holding would burden businesses in Michigan as well as in other states. It would mean that any Michigan business which received an interstate phone call would subject itself to the jurisdiction of the state from which that call emanated. Other courts have considered this proposition in the light of due process requirements and have concluded that such a phone call will not support jurisdiction. See, e.g., *Subacz v Town Tower Motel Corp,* 567 F Supp 1308, 1313 (ND Ind, 1983); *Storie v Beech Aircraft Corp,* 417 F Supp 141 (ED Mich, 1976); *Afirm, Inc v Frazee Paint & Wallcovering Co,* 624 F Supp 973, 976 (ND Ill, 1985).

Likewise, the interstate posting of a brochure in response to plaintiffs' phone call does not constitute "purposeful availment" of the forum state. See, e.g., *Agrashell, Inc v Bernard Sirotta Co,* 344 F2d 583 (CA 2, 1965); *Old Westbury Golf & Country Club, Inc v Mitchell,* 44 Misc 2d 687; 254 NYS2d 679 (1964); *Grobark v Addo Machine Co,* 16 Ill 2d 426; 158 NE2d 73 (1959).

Recognizing that there are limits to a state's power to exercise personal jurisdiction over a non-

resident defendant, the United States Supreme Court has said:

> [W]e have never accepted the proposition that state lines are irrelevant for jurisdictional purposes, nor could we, and remain faithful to the principles of interstate federalism embodied in the Constitution. [*World-Wide Volkswagen v Woodson, supra,* 293.]

We conclude that the lone advertisement, the single unsolicited phone call, and the mailing of a brochure do not, separately or collectively, satisfy the "minimum contacts" threshold which protects nonresidents under the federal Due Process Clause. Such tenuous threads, which purportedly link the defendant to Michigan, are not "akin . . . to a deliberate undertaking to do or cause an act or thing to be done in Michigan . . . ." *Khalaf, supra,* 153.[8]

IV

When *Hapner* was earlier before this Court, a four-member majority agreed that the "purposeful availment" test had not been met by the evidence. However, plaintiffs were given another opportunity to produce proofs regarding the extent of Solis' availment of the privilege of conducting its activities in this state:

> The record in the instant case shows only that products of the Swiss manufacturer, Solis Apparatus Manufactories, Ltd., are sold by it to independent importers located in New York, Chicago and Los Angeles. It does not appear whether any Solis

---

[8] Since we have determined that the purposeful-availment threshold has not been satisfied, it is unnecessary to proceed to a consideration of the factors bearing on the "reasonableness" of exercising jurisdiction. *World-Wide Volkswagen, supra,* 292.

products are distributed beyond the states of New York, Illinois and California as part of Solis' marketing system, and there is no basis for an inference either that its products were in fact distributed in Michigan or that Solis had reason to know that its products were distributed in Michigan through the system established for marketing them in this country. Absent such evidence, Michigan was not a "fair forum" although it is foreseeable that a purchaser in Illinois may be a Michigan resident or that an Illinois purchaser may bring or send the product to Michigan. [*Hapner, supra,* 169 (opinion of LEVIN, J.).]

So, the question before us now is whether the additional items of evidence brought forth by plaintiffs on remand were sufficient to meet federal due process standards. We look again to see whether the proofs establish "purposeful availment" of the benefits and protections of Michigan laws.

At the time of remand, there was no consensus in the courts as to the applicability of *Hanson v Denckla, supra,* to products liability actions.[9] However, in a case decided after remand, the United States Supreme Court applied the "purposeful availment" test and rejected the assertion that a consumer's unilateral act of bringing a defendant's product into the forum state is a sufficient constitutional ground for exercising personal jurisdiction over the defendant. *World-Wide Volkswagen Corp, supra.* The Court held that the Due Process Clause forbids the exercise of personal jurisdiction over an out-of-state automobile distributor whose only tie to the forum state resulted from a customer's decision to drive there.

In *World-Wide Volkswagen Corp, supra,* plaintiff

---

[9] This lack of consensus was noted by Justice MOODY in his dissenting opinion in *Hapner, supra,* 176.

argued that the inherent mobility of an automobile made it foreseeable that a wholesale automobile distributor would be haled into court in a distant state into which its customers might drive. The Supreme Court rejected that concept of foreseeability as a basis of jurisdiction; however, it did not say that foreseeability is wholly irrelevant to a finding of personal jurisdiction: "The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp, supra,* 297-298 (citation omitted). The Court explained:

> When a corporation "purposefully avails itself of the privilege of conducting activities within the forum State," *Hanson v Denckla,* 357 US at 253, it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. [*Id.,* 297.]

This language has generated judicial debate as to whether the action of an out-of-state defendant must be more purposefully directed at the forum

state than the mere act of placing a product in the stream of commerce.[10]

In its most recent pronouncement on this issue, a plurality of the United States Supreme Court determined that mere awareness on the part of a foreign defendant that components it manufactured, sold, and delivered outside the United States would reach the forum state in the stream of commerce would not meet federal due process tests. In *Asahi Metal Ind Co, Ltd v Superior Court of California,* 480 US —, —; 107 S Ct 1026; 94 L Ed 2d 92, 104 (1987), the plurality, speaking through Justice O'Connor, stated:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state.

Although the debate continues,[11] we note that

[10] See *Asahi Metal Ind Co, Ltd v Superior Court of California,* 480 US —, —; 107 S Ct 1026; 94 L Ed 2d 92, 103 (1987).

[11] In *Asahi, supra,* 94 L Ed 2d 107-108, Justice Brennan, joined by Justices White, Marshall and Blackmun, disagreed with the plurality's interpretation of the stream-of-commerce theory. Justice Brennan wrote that as long as a defendant is aware that the final product is being marketed in the forum state, jurisdiction premised on the placement of a product in the stream-of-commerce is consistent with

this position is not inconsistent with reasoning articulated by Justice LEVIN when *Hapner* was earlier before this Court.

> Unless products of the manufacturer are distributed in this state pursuant to its marketing system *in such a manner and to such an extent* that it can properly be said that the manufacturer has "purposefully avail[ed] itself of the privilege of conducting activities" within this state, it does not ordinarily have "substantial connection" or requisite minimum contacts with this state justifying the exercise of long-arm jurisdiction. [*Hapner, supra,* 168-169. Emphasis supplied.]

The standard we imposed upon remand required plaintiff to demonstrate that the action of defendant was more purposefully directed at the forum state than the mere act of placing a product in the stream of commerce. Due process presumes a firm foundation—i.e., specific facts which show affirmatively that the out-of-state defendant's marketing system is the kind from which a reasonable inference may be drawn that channels of commerce leading to the forum state have been chosen, so that the defendant might reasonably have anticipated being sued there.

On remand, the following evidence was produced by plaintiffs regarding Solis' business patterns and activity in the State of Michigan:

(1) The deposition of Schibli, Solis' marketing director, indicated that Solis sold its products f.o.b. Switzerland to Brauchli and to two other importers in New York and California. Schibli became marketing director in June, 1972, six months after DeAnn Hapner's injuries and eight months before plaintiffs commenced this suit. Schibli testified

due process principles, and no showing of additional conduct is required.

that Solis had no written contract with its importers, and that Solis exercised no control over the marketing activities of its importers, although Solis was aware that the importers sold its products in states other than those in which they were based. Schibli further stated that he would not be surprised if some of Solis' products ended up in Michigan.

(2) The deposition of Kraft revealed that in November, 1979, and November, 1980, he found nine beauty supply stores in the Detroit area which sold Solis products, and he purchased a hair dryer at one of them. He attended a Detroit beauty show in December, 1980, where Solis products were sold, and at that time he found that an establishment in Oak Park, Michigan, was listed as an authorized repair site for Solis.

(3) The Kolton affidavit listed eight companies in the Detroit area which she said were selling Solis' products in 1976.

(4) Plaintiffs also rely upon defendant Brauchli's February 4, 1976 answers to interrogatories.[12]

We note, as did the trial court, that the deposi-

---

[12] The interrogatories put to Brauchli were as follows:

1. State whether Rolf Brauchli, Inc., its employees or agents from 1969 through October 1974 ever sold in the State of Michigan products manufactured by the Solis Manufacturing Co.

2. State whether Rolf Brauchli, Inc., from 1969 to 1974 inclusive, sold to any companies, businesses, firms or individuals, doing business in Michigan, any products manufactured by the Solis Manufacturing Co.

The answers given by Brauchli were as follows:

1. The answer is yes to each of the years stated.

2. Rolf Brauchli, Inc., sells almost exclusively to beauty and barber supply dealers on a wholesale level. Occasionally a sale will be made to an individual business but sales are not made at retail nor are they made to individuals.

tions of Kraft and Schibli, and the affidavit of Kolton do not bear upon the relevant time frame. To be subject to personal jurisdiction, a nonresident defendant's contacts with the forum state must exist at the time the cause of action arose or, at the very least, before or at the time of commencement of the action. *Snyder v Eastern Auto Distributors, Inc,* 357 F2d 552, 556 (CA 4, 1965); *Electrical Equipment Co v Daniel Hamm Drayage Co,* 217 F2d 656, 663 (CA 8, 1954); *Rollins v Proctor & Schwartz,* 478 F Supp 1137, 1139-1140, n 2 (D SC, 1979), rev'd on other grounds 634 F2d 738 (CA 4, 1980). Only then can it be said that the nonresident had notice of potential liability that might arise from its contacts with the forum state:

> The Due Process Clause, by ensuring the "orderly administration of the laws," *International Shoe Co v Washington,* 326 US, at 319, gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.
>
> When a corporation "purposefully avails itself of the privilege of conducting activities within the forum State," *Hanson v Denckla,* 357 US, at 253, it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. [*World-Wide Volkswagen Corp, supra,* 297.]

The Kraft deposition establishes only that Solis' products were available in Michigan in 1979 and 1980. Such evidence does not demonstrate that Solis had reason fourteen years earlier to expect that it would be haled before a Michigan court.

Similar reasoning vitiates the value of the Kolton affidavit.

The Schibli deposition likewise does not bear upon the relevant time period. Schibli did not become marketing director until after the accident occurred, and he provided no direct testimony concerning Solis' marketing activities in Michigan at the time of or prior to the accident in January, 1972.

Plaintiffs' postremand proofs are deficient in another respect. They provide no direct evidence concerning the "manner" or "extent" of distribution, if any, by Solis of its products in Michigan during the relevant time period. As the Court said when this case was remanded:

> Unless products of the manufacturer are distributed in this state pursuant to its marketing system *in such a manner and to such an extent* that it can properly be said that the manufacturer has "purposefully avail[ed] itself of the privilege of conducting activities" within this state, it does not ordinarily have "substantial connection" or requisite minimum contacts with this state justifying the exercise of long-arm jurisdiction. [*Hapner, supra,* 168-169 (opinion of LEVIN, J.). Emphasis supplied.]

The Brauchli answers to interrogatories do no more than state that at least one Solis product was sold in Michigan during each of the years 1969-74. The answers provide no information as to manner or extent of distribution in any given year or group of years.

Plaintiffs bear the burden of proving that distribution of Solis' products in Michigan was so extensive that it established a connection with the state sufficient to justify the exercise of personal juris-

diction.[13] We conclude that the postremand evidence is too attenuated to be deemed "purposeful availment"; it indicates at most a "passive availment of Michigan opportunities." *Khalaf, supra,* 153-154.

Plaintiffs cite *McGee v Int'l Life Ins Co, supra,* 223, and argue that even a single act can support jurisdiction. However, the Supreme Court has noted, "some single or occasional acts" related to the forum will not be sufficient if "their nature and quality and the circumstances of their commission" create only "attenuated" affiliation with the forum. *Int'l Shoe Co v Washington, supra,* 318; *World-Wide Volkswagen Corp v Woodson, supra,* 299. *World-Wide Volkswagen* cautions against using the fortuitous arrival of a product in a given state as the basis for jurisdiction.

Plaintiffs contend that on remand the trial court and the Court of Appeals erroneously ignored the answers to interrogatories submitted by defendant Brauchli. Apparently, this contention is based upon the fact that the courts below made no specific mention of this item of proof in their opinions. A similar argument was rejected in *Nat'l Auto Transporters Ass'n v United States,* 121 F Supp 289 (ED Mich, 1954), where it was noted that courts rarely mention in their opinions all of the evidence they have considered.

We conclude, as did the Court of Appeals, that the trial court did not clearly err when it found upon remand that plaintiffs had failed to produce sufficient evidence to demonstrate that defendant had "purposefully avail[ed] itself of the privilege of conducting activities" within this state.

V

Accordingly, in *Witbeck,* we reverse the judg-

[13] The plaintiff has the burden to prove personal jurisdiction. *Weller v Cromwell Oil Co,* 504 F2d 927 (CA 6, 1974); *Speckine, supra,* 1059.

ment of the Court of Appeals and remand this case to the trial court for entry of judgment in favor of the defendant.

In *Hapner,* we affirm the judgment of the Court of Appeals.

LEVIN, BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred with GRIFFIN, J.

RILEY, C.J., concurred with GRIFFIN, J., in *Witbeck* only, and took no part in the decision of *Hapner.*

ARCHER, J. (*concurring in part and dissenting in part*). I concur in the result of the majority's opinion in *Witbeck v Bill Cody's Ranch Inn.* However, I dissent in *Hapner v Solis Apparatus Manufactories.*

The Michigan long-arm statute, MCL 600.715; MSA 27A.715, provides as follows:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
> (1) The transaction of any business within the state.
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

See also *Schneider v Linkfield,* 389 Mich 608; 209 NW2d 225 (1973).

I would hold that the proofs now offered by plaintiffs establish jurisdiction and create a question of fact for a jury. I would reverse the decisions of the trial court and the Court of Appeals.