947 F.2d 945
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Muriel D. HUGHES, Plaintiff-Appellant, Cross-Appellee,
v.
CABANAS DEL CARIBE HOTEL, Defendant-Appellee, Cross-Appellant.
 Nos. 90-1995, 90-1996.
 United States Court of Appeals, Sixth Circuit.
 Oct. 29, 1991.
 
 Before BOYCE F. MARTIN, Jr. and DAVID A. NELSON, Circuit Judges, and JARVIS, District Judge.*
 PER CURIAM.
 
 
 1
 This is a personal injury case in which a default judgment was entered against the defendant. After the filing of a motion for relief from the judgment, the district court (Rosen, J.) found that it lacked personal jurisdiction over the defendant. The motion for relief was granted, and the case was dismissed. We agree that the district court lacked jurisdiction, and we shall affirm the dismissal.
 
 
 2
 * The comprehensive opinion of the district court, reported at 744 F.Supp. 788 (E.D.Mich.1990), sets forth the facts in detail. We provide only a short summary here.
 
 
 3
 The plaintiff, Muriel Hughes, vacationed in Cozumel, Mexico, in March of 1983. Ms. Hughes suffered a fall in the bathroom of her hotel room and injured her back.
 
 
 4
 Ms. Hughes subsequently filed a diversity action against the Cabanas Del Caribe Hotel, asserting that the fall was the result of the defendant's negligence. Paragraph 5 of the complaint read as follows:
 
 
 5
 "At all times material hereto, the Defendant operated its hotel business for profit and invited members of the general public to come to its place of business by advertising through Thompson Vacations Inc. in the Detroit, Michigan area. The Plaintiff made reservations at Defendant's hotel and paid for same through Defendant's agent the Automobile Club of Michigan, in the City of Detroit, County of Wayne, State of Michigan."
 
 
 6
 The district court's records indicate that copies of the complaint, an amended complaint, and a summons were sent to the defendant by certified mail. A certified mail receipt was returned to the court clerk indicating that the copies of the documents had been received by one of the defendant's employees.
 
 
 7
 No answer was filed, and, after a hearing, the district court entered a default judgment against the defendant in the amount of $126,797. The hotel says it became aware of the default judgment in February of 1990, when writs of garnishment were served on three travel agencies in Florida. The hotel then moved for relief from judgment, contending that the plaintiff had sued the wrong hotel, that service of process was defective, and that the court lacked jurisdiction over the defendant's person.
 
 
 8
 The court rejected the first two contentions, but held that it could not exercise limited personal jurisdiction over the Mexican defendant under Michigan's long-arm statute, Mich.Comp.Laws 600.715(1). The court found that the defendant had not purposely availed itself of the privilege of acting in Michigan, that the cause of action did not arise from the hotel's activities in Michigan, and that the exercise of jurisdiction over the hotel by a federal court sitting in Michigan would be improper under the Due Process Clause of the Fourteenth Amendment.
 
 II
 
 9
 The defendant hotel drew approximately 85 percent of its customers from the United States. To attract such customers, the hotel would offer rooms for block reservations to various U.S. tour organizations. The organization with which we are concerned in this case is Thomson Vacations, Inc., a tour wholesaler. Thomson is an Illinois corporation headquartered in that state. It had no offices in Michigan. Thomson would advertise its vacation packages through brochures that gave no hotel phone numbers or addresses, because Thomson did not want vacationers to contact the hotels directly.
 
 
 10
 Ms. Hughes bought a Thomson vacation package through the Automobile Club of Michigan after looking through the Thomson brochure. The package included accomodation at the defendant hotel. Ms. Hughes paid the Automobile Club in Detroit. The Automobile Club's practice, on receiving payment from a vacationer, was to take out a service fee and remit the balance to Thomson. Thomson would then make the necessary reservations and pay the hotel.
 
 III
 
 11
 Where a federal court's jurisdiction over the subject matter of a case rests on diversity of citizenship, the court must look to the law of the state in which it sits to determine the reach of its personal jurisdiction. The relevant statute here is Mich.Comp.Laws § 600.715, which provides in pertinent part as follows:
 
 
 12
 "The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
 
 
 13
 (1) The transaction of any business within the state. * * * "
 
 
 14
 In general, the Michigan long-arm statute is designed to reach as far as the United States Constitution allows. To be consistent with the Constitution, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (citations omitted). In considering when a defendant should reasonably anticipate being haled into a court in a particular state, the Supreme Court has said this:
 
 
 15
 "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).
 
 
 16
 The "purposeful availment" requirement is satisfied where the defendant's contacts with the forum state "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." Id. at 475 (citations omitted) (emphasis in original). The purposeful availment requirement guards against a defendant having to engage in litigation in a jurisdiction "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or a third person.' " Id. (citations omitted.) A court must weigh the facts of each case to determine if the exercise of personal jurisdiction over a defendant "would comport with 'fair play and substantial justice.' " Id. at 485-86 (quoting Kulko v. California Superior Court, 436 U.S. 84, 92 (1978)).
 
 
 17
 In the case at bar, the district court concluded that the defendant hotel did not purposefully avail itself of the privilege of transacting business in Michigan. We agree. The hotel had no direct contacts with Ms. Hughes in Michigan. Her reservations and payment passed through two separate travel organizations before they reached the defendant. The hotel conducted no advertising campaign aimed specifically at Michigan residents, it maintained no offices in Michigan, and it had no agents in Michigan.
 
 
 18
 Ms. Hughes' argument that Thomson operated as the hotel's agent is not convincing. The parties agree that the hotel had a contractual relationship with Thomson under which Thomson advertised and sold vacation packages that included rooms at the hotel. As Ms. Hughes' attorney acknowledged before the district court, however, Thomson is "a nationwide marketer of travel packages." The uncontradicted evidence establishes that the hotel did not control or direct Thomson's advertising campaigns and did not tell Thompson where to conduct its business. Thomson's travel brochure for the period during which Ms. Hughes took her vacation contains no suggestion that Thomson acted as the hotel's agent. The brochure contains a document entitled a "Fair Trade Contract," which explains that "[t]hese vacations are operated by Thomson Vacations, Inc. ... as principal and tour operator" and that "[a]s principal and tour operator, we make arrangement with airlines, hotels and other independent parties to provide you with the travel services you purchase." Ms. Hughes could thus have been under no illusion as to the fact that Thomson was acting as a principal--and the hotel, as an "independent part[y]" in Mexico, could not reasonably have expected to be haled into a court in Michigan on account of Thomson's dealings with the Automobile Club of Michigan.
 
 
 19
 This is not a case like Catalano v. BRI, Inc., 724 F.Supp. 1580, 1582 (E.D.Mich.1989), where a hotel reserved rooms for its agent, American Airlines, which maintained sales offices in Michigan. Nor is this a case like Wronikowski v. General Hotels Corp., 716 F.Supp. 5 (E.D.Mich.1989), where the defendant hotel was a member of a national franchise group with members in Michigan. Thomson had no Michigan offices--it merely sent its brochures to independent agencies within the state--and the Cabanas Del Caribe Hotel is not associated with any chain of hotels in Michigan.[1]
 
 
 20
 Witbeck v. Bill Cody's Ranch Inn, 428 Mich. 659, 411 N.W.2d 439 (1987), is instructive here. In that case, a Michigan family decided to vacation at a dude ranch located in Wyoming after reading about the ranch in a regional tour book published by the American Automobile Association. A Michigan agent of the AAA recommended the ranch to the family, but the agent was not authorized to accept reservations. A family member called the ranch from Michigan and made a reservation directly. While the family vacationed at the ranch, one of the group was injured in a fall from a horse. The Michigan Supreme Court concluded that Michigan could not constitutionally exercise long-arm jurisdiction over the ranch. With respect to the advertisement placed in the AAA tour guide, the court concluded that "a single advertisement in a national publication does not, by itself, constitute 'purposeful availment' of the forum state." Id. at 671, 411 N.W.2d at 445. The court further concluded that the "acts by the defendant, whether considered separately or in combination, do not constitute requisite 'minimum contacts' with the State of Michigan so as to justify maintenance of this suit under the federal Due Process Clause." Id., 411 N.W.2d at 445.
 
 
 21
 Shute v. Carnival Cruise Lines, 897 F.2d 377 (9th Cir.1990), reversed on other grounds, 111 S.Ct. 1522 (1991), is readily distinguishable from the case at bar. In that case the Ninth Circuit Court of Appeals concluded that a federal court in the State of Washington could exercise jurisdiction over a cruise line that advertised its cruises in Washington newspapers, provided brochures to travel agents in Washington, and periodically held seminars for travel agents in Washington. The cruise line's contacts with the State of Washington were thus significantly more extensive than are the defendant hotel's contacts with the State of Michigan.
 
 
 22
 The defendant hotel did not purposefully avail itself of the privilege of doing business in Michigan, and it did nothing that should have put it on notice that it could expect to be haled into court in Michigan. The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable James H. Jarvis, United States District Judge for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 Nor is this a case like Theunissen v. Matthews, 935 F.2d 1454 (6th Cir.1991), where a Canadian defendant was found to have purposefully availed himself of the privilege of conducting business in Michigan based on evidence presented by the plaintiff that the defendant had "maintained a residence in Michigan and contracted with common carriers and other firms [in Michigan]." In the case at bar, the hotel neither had a physical presence in Michigan nor contracted directly with firms located in Michigan