GRIER v SHERRILL MACHINERY COMPANY

Docket Nos. 101701, 103024. Submitted June 15, 1988, at Grand
Rapids. Decided February 2, 1989.

Eric Lee Grier was injured while cleaning a sanding belt on a
wide-belt sanding machine leased by his employer. Grier
brought a products liability action against J.C. Steele & Sons,
Inc., the manufacturer of the machine, in Berrien Circuit
Court. J.C. Steele sought contribution from Sherrill Machinery
Company in a third-party action on the ground that Sherrill
was responsible for the principal design of the sander and was
involved in its manufacture, sale, and distribution. Grier
amended his complaint to add other defendants, including
Sherrill. A third-amended complaint added more defendants
and a claim by Grier's parents, seeking expense and consortium
damages. Sherrill moved for summary disposition on the claims
against it for lack of personal jurisdiction. Sherrill is a North
Carolina corporation which produced the original sanders from
1957 to 1961, approximately 150 to 160 of which were sold
throughout the United States, including twenty-five which were
sold in Michigan. Sherrill stopped manufacturing the sanders
in 1962 and gave the drawings and patterns of the sander,
along with permission to manufacture the sander, to J.C. Steele
& Sons, Inc. Sherrill retained only the patent on the sander.
J.C. Steele began manufacturing the sanders in 1962 or 1963.
J.C. Steele manufactured the sanders, basically unaltered, until
1966. The machine which caused Grier's injury was manufac-
tured and sold by J.C. Steele in 1963. Sherrill did not consent
to jurisdiction in Michigan and has not distributed, advertised,
or marketed its product in Michigan since 1962. The court,
Ronald J. Taylor, J., granted summary disposition in favor of
Sherrill for lack of personal jurisdiction. The court later
granted partial summary disposition in favor of the remaining

REFERENCES

Am Jur 2d, Corporations §§ 2178, 2179, 2210-2212; Parent and Child
§§ 97, 103.
Applicability, to actions not based on products liability, of state
statutes or rules of court predicating in personam jurisdiction
over foreign manufacturers or distributors upon use of their
goods within state. 20 ALR3d 957.

defendants, dismissing the claims of Grier's parents as barred by the statute of limitations. Separate appeals were filed from the orders granting summary disposition in favor of Sherrill and partial summary disposition against Grier's parents. The appeals have been consolidated.

The Court of Appeals *held:*

1. Plaintiffs' contention that the circuit court had both general and personal jurisdiction over Sherrill is rejected. Plaintiffs failed to demonstrate the requisite minimum contacts between Sherrill and the State of Michigan to satisfy the due process requirement for application of Michigan's long-arm statute, under which limited personal jurisdiction may be exercised; the record fails to indicate a basis for the court's assertion of general personal jurisdiction over Sherrill; and personal jurisdiction over Sherrill could not be based upon a stream of commerce theory. The court did not err in granting summary disposition in favor of Sherrill.

2. The common law of the State of Michigan does not recognize a parent's action for loss of a child's society and companionship. The court did not err in dismissing the claims of Grier's parents.

Affirmed.

1. COURTS — GENERAL PERSONAL JURISDICTION — CORPORATIONS.

   A court may assert general personal jurisdiction over a corporate defendant if the corporation consents, if it is incorporated under the laws of Michigan, or if it carries on a continuous and systematic part of its general business within the state (MCL 600.711; MSA 27A.711).

2. COURTS — LONG-ARM JURISDICTION — FOREIGN CORPORATIONS — DUE PROCESS.

   A court may assert limited personal jurisdiction over an out-of-state corporation where the corporation establishes minimum contacts in the state in such a way that the maintenance of a suit will not offend traditional notions of fair play and substantial justice; in each case, it must be shown that the corporation purposely availed itself of the privilege of conducting activities within the state so as to have invoked the benefits and protections of its laws and so as to reasonably have anticipated being haled into court in the state (US Const, Am XIV; MCL 600.715; MSA 27A.715).

3. CORPORATIONS — FOREIGN CORPORATIONS — LONG-ARM JURISDICTION.

   A corporation, while subject to suit in a state in which it purpose-

fully avails itself of the privilege of conducting activities, can act to alleviate the risk of burdensome litigation by severing its connection with the state.

4. COURTS — FOREIGN CORPORATIONS — LONG-ARM JURISDICTION — STREAM OF COMMERCE.

A state does not exceed its powers under the due process clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the state; under the stream of commerce theory, the plaintiff must demonstrate that the corporation's action was more purposefully directed at the forum state than the mere act of placing a product in the stream of commerce (US Const, Am XIV).

5. ACTIONS — NEGLIGENCE — PARENT AND CHILD — LOSS OF CHILD'S SOCIETY AND COMPANIONSHIP.

A claim by a parent for the loss of a child's society and companionship where the child has been negligently injured is not recognized under the common law of Michigan.

*Conybeare Law Office, P.C.* (by *Bruce C. Conybeare*), for plaintiffs.

*Tolley, Fisher & Verwys, P.C.* (by *Mark H. Verwys* and *Paul L. Nelson*), for Sherrill Machinery Co.

*Straub, Seaman & Allen, P.C.* (by *Drew F. Seaman*), for J.C. Steele & Sons, Inc.

Before: WEAVER, P.J., and DOCTOROFF and M. F. SAPALA,* JJ.

PER CURIAM. These consolidated appeals arise out of products liability actions filed by plaintiff Eric Lee Grier seeking damages for injuries he sustained while cleaning a sanding belt on a wide-belt sanding machine leased by his employer. Plaintiff originally sued defendant J.C. Steele & Sons, Inc., the manufacturer of the machine, on

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

November 2, 1984. J.C. Steele sought contribution from third-party defendant Sherrill Machinery Company, alleging that Sherrill was responsible for the principal design of the sander and was involved in its manufacture, sale, and distribution. Plaintiff amended his complaint to add several new defendants, including Sherrill. On May 26, 1987, a third-amended complaint was filed adding more defendants and a claim by plaintiff's parents, Dale and Mary Grier, seeking expense and consortium damages. In March, 1986, Sherrill moved for summary disposition on plaintiffs' complaint and J.C. Steele's third-party complaint pursuant to MCR 2.116(C)(1) for lack of personal jurisdiction. The trial court reserved its ruling on the motion until after the completion of discovery. Sherrill later renewed its motion, and on June 15, 1987, an order was entered granting summary disposition to Sherrill on the ground of lack of personal jurisdiction. The court later granted partial summary disposition, dismissing the claims of Dale and Mary Grier as barred by the statute of limitations. Plaintiffs appeal from the June 15, 1987, order of summary disposition and the orders of partial summary disposition.

I

Plaintiffs contend that the circuit court had both general and personal jurisdiction over Sherrill. MCL 600.711; MSA 27A.711 authorizes the assertion of general personal jurisdiction over a corporate defendant if the corporation consents, if it is incorporated under the laws of Michigan, or if it carries on a continuous and systematic part of its general business within the state. MCL 600.715; MSA 27A.715 authorizes a court to exercise limited personal jurisdiction over an out-of-state corporation

arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

Application of Michigan's long-arm statute, however, is limited by the due process clause of the Fourteenth Amendment. *World-Wide Volkswagen Corp v Woodson,* 444 US 286, 291; 100 S Ct 559; 62 L Ed 2d 490 (1980).

The Due Process Clause of the Fourteenth Amendment "does not contemplate that a state may make binding a judgment in personam against an individual or a corporate defendant with which the state has no contacts, ties, or relations." *Int'l Shoe Co v Washington,* 326 US 310, 319; 66 S Ct 154; 90 L Ed 95; 161 ALR 1057 (1945). The "constitutional touchstone" is whether the defendant purposefully established "minimum contacts" in the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Id.,* 316. *Burger King Corp v Rudzewicz,* 471 US 462, 474; 105 S Ct 2174; 85 L Ed 2d 528 (1985).

The foreseeability of causing injury in another state is not a "sufficient benchmark" for exercising personal jurisdiction over an out-of-state defendant who has not consented to suit there. *World-Wide Volkswagen Corp v Woodson,* [*supra,* p 295]; *Khalaf v Bankers & Shippers Ins Co,* 404 Mich 134, 145; 273 NW2d 811 (1978). Rather, "the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into Court there." *World-Wide Volkswagen Corp, supra,* 297.

In determining when a foreign defendant should reasonably anticipate being "haled into court" in

the forum state, the Supreme Court has provided this guidance:

"The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. [*Hanson v Denckla,* 357 US 235, 253; 78 S Ct 1228; 2 L Ed 2d 1283 (1958).]"

This "purposeful availment" requirement insures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, *Keeton v Hustler Magazine, Inc,* 465 US 770, 774; 104 S Ct 1473; 79 L Ed 2d 790 (1984); *World-Wide Volkswagen Corp, supra,* or as the result of the "unilateral activity of another party or a third person," *Helicopteros Nacionales De Columbia, S A v Hall,* 466 US 408, 417; 104 S Ct 1868; 80 L Ed 2d 404 (1984).

\* \* \*

We note that the focus of due process analysis is primarily on the defendant, rather than the plaintiff. *Rush v Savchuk,* 444 US 320, 332; 100 S Ct 571; 62 L Ed 2d 516 (1980). "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state." *Burger King, supra,* 475, citing *McGee v Int'l Life Ins Co,* 355 US 220, 223; 785 S Ct 199; 2 L Ed 2d 223 (1957) (emphasis in the original).

\* \* \*

Even if it can be established that contacts with the forum state are sufficient to demonstrate purposeful availment, still the requirements of due process may not be fulfilled. Once the purposeful-availment threshold has been satisfied, it then becomes necessary to determine whether the exercise of personal jurisdiction, if based on those

contacts and weighed in light of other factors, would comport with "notions of fair play and substantial justice." *Int'l Shoe Co, supra,* 316. "Other factors" to be weighed in appropriate cases would include "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies . . . ." *World-Wide Volkswagen Corp, supra,* 292.

Whether the exercise of long-arm jurisdiction comports with due process requirements is a question which must be decided on a case-by-case basis. [*Witbeck v Bill Cody's Ranch Inn,* 428 Mich 659, 666-669; 411 NW2d 439 (1987).]

We agree with the circuit court that plaintiffs failed to demonstrate the requisite minimum contacts between defendant Sherrill and the State of Michigan to satisfy the due process requirement.

Sherrill is a North Carolina corporation which originally produced two lines of machinery, woodworking and textile. The woodworking machinery included a finish sander designed by Sherrill's founder, Gaither Sherrill, and two other men. Gaither obtained a patent on the design. From 1957 to 1961, Sherrill's woodworking machinery was sold by Frank Quis, an independent sales distributor and manufacturer's representative. Quis sold approximately 150 to 160 of Sherrill's sanding machines throughout the United States, including 25 machines sold in Michigan.

In 1962, Sherrill discontinued manufacturing its woodworking machinery, including the sanders. Sherrill advised Quis of the discontinuance and told him that he could get whomever he wanted to build the sanders. After contact between Quis and

J.C. Steele, J.C. Steele obtained the drawings and patterns of the sander and began its manufacture in late 1962 or early 1963. The patterns and drawings for the sander were gratuitously transferred to J.C. Steele by Sherrill without any agreement. Sherrill retained only the patent.

With the exception of a front girth and a new logo, J.C. Steele manufactured the sander without any alteration in the design of the machine. J.C. Steele also supplied replacement parts for its machines and those that Sherrill had manufactured. J.C. Steele manufactured the sander until 1966 and sold approximately sixty-nine machines. The machine alleged to have caused plaintiff's injuries was manufactured and sold by J.C. Steele in 1963.

The record fails to indicate a basis for the court's assertion of general personal jurisdiction over Sherrill. Sherrill is not a Michigan corporation nor did it consent to jurisdiction in Michigan. While arguably Sherrill carried on a continuous and systematic part of its general business in Michigan prior to 1962, since 1962 Sherrill has not distributed, advertised, or marketed its products in Michigan.

We reject plaintiff's contention that once general jurisdiction attaches, it remains forever. Such a principal offends traditional notions of fair play and substantial justice. In *World-Wide Volkswagen Corp, supra,* p 297, the Supreme Court, while charging a corporation with notice that it is subject to suit in a state within which it " 'purposefully avails itself of the privilege of conducting activities,' " [quoting *Hanson v Denckla, supra,* p 253] recognized that the corporation "can act to alleviate the risk of burdensome litigation by . . . severing its connection with the State." While the record does not indicate that Sherrill's motivation was to avoid burdensome litigation, the

record shows that in 1962 or 1963, Sherrill discontinued its business in Michigan.

Plaintiff alternatively argues that the circuit court could have exercised limited personal jurisdiction over Sherrill, citing *Cliffs Forest Products Co v Al Disdero Lumber Co,* 144 Mich App 215; 375 NW2d 397 (1985), lv den 424 Mich 896 (1986). In that case, the plaintiff contracted with Wright & Barker, Ltd. to construct a mill in Michigan. Wright & Barker gave the mill's design specifications to the defendant, a general supplier of building components in Oregon. The defendant engaged Dick W. Ebeling to supply shop drawings for the components known as corbels. The corbels were made in Oregon and assembled in Michigan by O'Dovero Construction Co., the general contractor. After completion of the mill, the roof partially collapsed. This Court held that Ebeling was subject to limited personal jurisdiction:

> Traditional notions of fair play and substantial justice are not offended by requiring Ebeling to come and defend in Michigan. Ebeling was aware that its designs were being incorporated into a mill to be constructed in Michigan. Furthermore, after being served with the complaint, Ebeling appeared and defended the suit in Alger County Circuit Court. We conclude that the circuit court properly exercised jurisdiction over Ebeling. [*Cliffs Forest Products Co, supra,* p 225.]

In this case, Sherrill, unlike Ebeling, did not design the sander for a specific Michigan corporation, nor had Sherrill participated in the design or manufacture of the sander at the time Eric Grier was injured. The " 'purposeful availment' requirement insures that a defendant will not be haled into a jurisdiction solely as a result of . . . 'attenuated' contacts." *Witbeck, supra,* p 667. Sherrill's

purposeful decision to cease manufacturing the sander, the transfer of the sander's drawings and patterns to J.C. Steele in 1962, the subsequent manufacture and marketing of the sander by J.C. Steele, including the sander which allegedly caused Eric's injury, and the lapse of time between Sherrill's cessation of manufacturing and the transfer to J.C. Steele and the occurrence of the injury severed any contacts Sherrill may have had with Michigan upon which limited jurisdiction could have been based.

Finally, plaintiffs attempt to base personal jurisdiction upon a stream of commerce theory. Plaintiffs contend that it was reasonably foreseeable at the time the drawings were transferred to J.C. Steele that the sander could cause injury to a Michigan resident. In *Witbeck,* pp 676-677, the Supreme Court stated that under a stream of commerce theory, the plaintiff must demonstrate that the defendant's action was "more purposefully directed at the forum state than the mere act of placing a product in the stream of commerce." Under the circumstances presented, we cannot assume from Sherrill's act of providing J.C. Steele with the patterns and drawings that Sherrill might reasonably have anticipated defending a suit in Michigan. *Witbeck, supra,* p 678.

Accordingly, we affirm the order of summary disposition dismissing all claims against defendant and third-party defendant Sherrill.

II

Plaintiffs Dale and Mary Grier appeal from orders of partial summary disposition entered in favor of the remaining defendants. The court held plaintiffs' claims for consortium damages barred

by the statute of limitations. We find the resolution of the issue controlled by *Sizemore v Smock,* 430 Mich 283; 422 NW2d 666 (1988). In *Sizemore, supra,* p 285, our Supreme Court held that "the common law of this state does not recognize a parent's action for loss of a child's society and companionship" and deferred to the Legislature any further extension of a negligent tortfeasor's liability for consortium damages.

The orders granting partial summary disposition and dismissing the claims of Dale and Mary Grier are accordingly affirmed.

Affirmed.