STARBRITE DISTRIBUTING, INC v EXCELDA MANUFACTURING
COMPANY

Docket No. 161248. Submitted January 11, 1995, at Lansing. Decided
June 13, 1995, at 9:10 A.M. Leave to appeal sought.

Starbrite Distributing, Inc., a Florida corporation, brought an
action in the Livingston Circuit Court against Excelda Manu-
facturing Company, a Michigan corporation, and P. D. George
Company, a Delaware corporation doing business in St. Louis,
Missouri, alleging breach of contract after a defect appeared in
chemicals P. D. George had sold to Excelda, F.O.B. St. Louis,
Missouri, and Excelda had diluted and packaged for delivery to
Starbrite in Florida. The contract between P. D. George and
Excelda stated that the delivery point was St. Louis and that
the laws of the State of Missouri would govern any dispute
between them. Excelda responded to Starbrite's action with a
third-party action against P. D. George. P. D. George moved for
summary disposition, alleging that personal jurisdiction over it
did not exist under Michigan's long arm statute, MCL
600.715(1), (2), and (5); MSA 27A.715(1), (2), and (5). The court,
Stanley J. Latreille, J., denied the motion, finding it could
exercise personal jurisdiction under subsection 5. P. D. George
appealed by leave granted.

The Court of Appeals held:

1. The trial court erred in finding that it had personal
jurisdiction over P. D. George based solely on the fact that it
had shipped products to Michigan.

2. The trial court erred in finding that the fact that the
chemicals were sold F.O.B. at St. Louis, Missouri, was not
dispositive with regard to the issue regarding the place of
delivery. Excelda agreed that title transferred to it when P. D.
George delivered the chemicals to the carrier in St. Louis.
Therefore, P. D. George furnished materials in Missouri, not
Michigan. Because Starbrite's claims are derivative, it is bound
by that fact.

3. The facts do not support Excelda's stream of commerce

REFERENCES

Am Jur 2d, Courts §§ 146, 146.3; Process §§ 12-14; Sales §§ 566, 575.
See ALR Index under Free On Board; Long Arm Statutes; Mini-
mum Contacts.

theory. There is no evidence that P. D. George purposefully directed its product toward Michigan. The requirements of subsection 5 of the long arm statute were not met, MCL 600.715(5); MSA 27A.715(5).

4. The nature of the relationship between the parties did not show that the requirements of MCL 600.715(5); MSA 27A.715(5) had been met or that Excelda contemplated being haled into Michigan courts.

5. Telephone calls and visits to Excelda in Michigan by P. D. George's representative after the problem arose did not constitute the transaction of business within Michigan sufficient to enable the trial court to exercise personal jurisdiction over P. D. George under MCL 600.715(1); MSA 27A.715(1). P. D. George's attempts to remedy the problem after it arose do not constitute the transaction of any business within the state for purposes of subsection 1. To be subject to personal jurisdiction, a nonresident defendant's contacts with the forum state must exist at the time the cause of action arose or, at the least, before or at the time of the commencement of the action.

6. P. D. George was not estopped from asserting that its filing of a collection complaint against Excelda in Michigan before this action was brought did not constitute transacting business in Michigan. That suit cannot be used to establish the necessary minimum contacts to establish jurisdiction.

7. The rules of statutory construction do not support the exercise of jurisdiction over P. D. George. The exercise of limited personal jurisdiction over P. D. George would violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution. P. D. George's contacts with Michigan were insufficient to satisfy the minimum-contacts requirement of the Due Process Clause. A consideration of the relevant factors indicates that Michigan lacks personal jurisdiction over P. D. George.

Reversed.

1. COURTS — LONG-ARM JURISDICTION.

There are two issues to be considered in determining whether a court may exercise jurisdiction under Michigan's long arm statute: first, whether the rules of statutory construction support the exercise of jurisdiction over the defendant; second, whether the exercise of limited personal jurisdiction violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution; the constitutional touchstone is whether the defendant purposely established minimum contacts in the forum state such that the maintenance of the suit

does not offend traditional notions of fair play and substantial justice.

2. CONTRACTS — SALES — WORDS AND PHRASES — "F.O.B."

The term "F.O.B." in a contract means "free on board" at a named place of delivery; where a contract states that it is F.O.B. and the named place is the place of shipment, the seller bears the expense and risk of putting the goods in the possession of the carrier (MCL 440.2319[1][a]; MSA 19.2319[1][a]).

3. COURTS — LONG-ARM JURISDICTION.

An action of a nonresident defendant that is purposefully directed toward the forum state must be shown to establish the substantial connection between the defendant and the forum state necessary for a finding of minimum contacts with the forum state sufficient to support the imposition of long-arm jurisdiction over the defendant; for a stream of commerce theory to pass constitutional muster, there must be more than mere awareness by the defendant that its product could reach the forum state in the stream of commerce (MCL 600.715[5]; MSA 27A.715[5]).

4. COURTS — LONG-ARM JURISDICTION.

A nonresident defendant's contacts with the forum state must exist at the time the cause of action arose or, at the least, before or at the time of the commencement of the action to be sufficient to support the exercise of personal jurisdiction over the defendant (MCL 600.715[1]; MSA 27A.715[1]).

5. COURTS — LONG-ARM JURISDICTION — LIMITED PERSONAL JURISDICTION — MINIMUM CONTACTS.

Minimum contacts between a nonresident defendant and a state sufficient to support the exercise of limited personal jurisdiction over the defendant exist only where the cause of action arises from the defendant's activities in the state relative to that cause of action (MCL 600.715; MSA 27A.715).

6. COURTS — LONG-ARM JURISDICTION — MINIMUM CONTACTS WITH STATE.

The determination whether sufficient minimum contacts exist between a nonresident defendant and the state to support exercising limited personal jurisdiction requires a three-part test: first, the defendant must have purposefully availed itself of the privilege of conducting activities in the state, thus invoking the benefits and protections of the state's laws; second, the cause of action must arise from the defendant's activities in the state; and third, the defendant's activities must be so

substantially connected with the state as to make the exercise of jurisdiction over the defendant reasonable; other factors to be considered include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies.

*Harris & Literski* (by *John K. Harris, Edwin J. Literski,* and *Charles W. Widmaier*), for Starbrite Distributing, Inc.

*Alan J. Czekaj,* for Excelda Manufacturing Company.

*Fraser Trebilcock Davis & Foster, P.C.* (by *C. Mark Hoover* and *Charyn K. Sikkenga*), and *Popham, Haik, Schnobrich & Kaufman, Ltd.* (by *John Golden* and *Paul L. Nettleton*), for P. D. George Company.

Before: McDONALD, P.J., and TAYLOR and HOEKSTRA, JJ.

TAYLOR, J. This is an action alleging breach of contract filed by Starbrite Distributing, Inc., a Florida corporation, against Excelda Manufacturing Company, a Michigan corporation, and P. D. George Company, a Delaware corporation doing business in St. Louis, Missouri. A cross-claim was filed by Excelda against P. D. George. Defendant/cross-defendant, P. D. George Company, appeals the denial of its motion for summary disposition, based on lack of personal jurisdiction, MCR 2.116(C)(1). We reverse.

At the instigation of Robert E. Pollack of Robert's Innovations, an entity existing and located in the State of New Jersey, P. D. George sold materials to Excelda for the production of teak oil for

marine applications, F.O.B. St. Louis, Missouri. The contract of sale between P. D. George and Excelda not only established that the delivery point was St. Louis, but also stated that the laws of the State of Missouri would govern any dispute between the parties. Upon taking delivery, Excelda diluted the chemicals and packaged them for shipment to Starbrite in Florida.

An alleged defect in the concentrate arose affecting its quality and shelf life. Starbrite sued P. D. George in federal court in Florida. The court dismissed the suit for lack of jurisdiction. Starbrite then initiated a second suit in the same court against Excelda, who in turn sued P. D. George in a third-party action. This suit was also dismissed for lack of jurisdiction. Starbrite then filed the instant suit in Michigan against both Excelda and P. D. George. In defending the suit brought by Starbrite, Excelda initiated a third-party action against P. D. George. In response, P. D. George moved for summary disposition based on lack of personal jurisdiction. Starbrite and Excelda claimed that jurisdiction existed under Michigan's long arm statute. MCL 600.715(1), (2), and (5); MSA 27A.715(1), (2), and (5). The trial court denied P. D. George's motion, finding that it could exercise personal jurisdiction over P. D. George pursuant to MCL 600.715(5); MSA 27A.715(5). P. D. George applied for interlocutory leave to appeal, which this Court granted.[1]

P. D. George argues that the trial court erred in finding that it had personal jurisdiction over P. D. George based solely on the fact that it had shipped products to Michigan. We agree.

The long arm statute states:

---

[1] We decline to address the claim that this case falls within subsection 2 of the statute, because both Starbrite and Excelda acknowledge that no tort was alleged in the pleadings.

The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of any real or tangible personal property situated within the state.

(4) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant. [MCL 600.715; MSA 27A.715.]

As this Court instructed in *Mozdy v Lopez,* 197 Mich App 356, 358; 494 NW2d 866 (1992):

There are two issues in deciding whether a court of this state can exercise jurisdiction under this statute. First, whether the rules of statutory construction support the exercise of jurisdiction over the defendants. Second, whether the exercise of limited personal jurisdiction violates the Due Process Clause of the Fourteenth Amendment.

Accordingly, we will initially address whether P. D. George's shipping of materials to Michigan satisfied subsection 5 of the statute. In particular, we must determine whether P. D. George entered into a contract for services to be performed or for materials to be furnished in Michigan.

The contract between P. D. George and Excelda specified shipment F.O.B. St. Louis, Missouri. Pursuant to the Uniform Commercial Code, adopted in Michigan at MCL 440.1101 *et seq.*; MSA 19.1101 *et seq.*,[2] the term "F.O.B." (which means "free on board") at a named place is a delivery term. When the term is F.O.B. and the named place is the place of shipment, the seller bears the expense and risk of putting the goods in the possession of the carrier. MCL 440.2319(1)(a); MSA 19.2319(1)(a). We conclude that the trial court erred in finding that this fact was not dispositive with regard to the issue of the place of delivery. It was. By entering into the contract,[3] Excelda agreed that title transferred to it when P. D. George delivered the property to a carrier in St. Louis. *Gulf Vegetable & Fruit Co v Lane,* 258 Mich 634, 636; 242 NW 792 (1932); *Dow Chemical Co v Detroit Chemical Works,* 208 Mich 157, 164; 175 NW 269 (1919). This also means that P. D. George, rather than furnishing materials in Michigan, furnished them in Missouri. Therefore, under the terms of the contract, Excelda cannot be heard to argue that P. D. George furnished materials in Michigan. Because Starbrite's claims in this regard are, at best, derivative of Excelda's, Starbrite is similarly bound.

Alternatively, Excelda asserts that because it received a number of shipments of P. D. George's product, the ongoing nature of the relationship modified the delivery terms of the contract. This is in legal theory an assertion that the contract was

[2] Missouri has also adopted the Uniform Commercial Code. See Mo Rev Stat, ch 400, §§ 400.1-101 to 400.10-102.

[3] Excelda has claimed that it was unaware of this term of the agreement. Such an argument is unavailing because mere failure to read is not a defense in an action to enforce the terms of a written agreement. See *DeValerio v Vic Tanny Int'l,* 140 Mich App 176, 180; 363 NW2d 447 (1984).

changed by the subsequent conduct of the parties. Yet nothing in the contract's terms would suggest that multiple deliveries were not contemplated. Thus, there was not a change of the original contract and the effect of the original agreement with regard to the place of delivery was still controlling.

Next, Excelda asserts that a stream of commerce theory supports its claim that the requirements of subsection 5 were met. For a stream of commerce theory to pass constitutional muster there must be more than mere awareness by the defendant that its products could reach the forum state in the stream of commerce. *Asahi Metal Industry Co, Ltd v Superior Court of California,* 480 US 102, 112-113; 107 S Ct 1026; 94 L Ed 2d 92 (1987). "The 'substantial connection,' between the defendant and the forum State necessary for a finding of minimum contacts" under the doctrines of *Int'l Shoe Co v State of Washington,* 326 US 310; 66 S Ct 154; 90 L Ed 95 (1945), and its progeny, requires "an action of the defendant purposefully directed toward the forum State." *Asahi, supra* at 112, quoting *Burger King Corp v Rudzewicz,* 471 US 462, 475; 105 S Ct 2174; 85 L Ed 2d 528 (1985)]. Excelda has failed to present evidence that P. D. George has purposefully directed its products toward the forum state. *Asahi* at 112. Rather, as discussed above, in its contract with Excelda, P. D. George agreed only to supply the products to Excelda in Missouri. When coupled with the evidence that P. D. George has no offices, agents, employees, or distributors in Michigan, the stream of commerce argument is unavailing.

Starbrite and Excelda also make reference to the case of *LT Elsey & Son, Inc v American Engineering Fabrics, Inc,* 191 Mich App 146; 477 NW2d 483 (1991), to argue that the nature of the

relationship between the parties showed that the requirements of subsection 5 had been met and that Excelda must have contemplated being haled into Michigan courts. On the contrary, we find there was nothing in the parties' relationship to suggest this and, in fact, the opposite was the case.

In *Elsey,* personal jurisdiction over the defendant pursuant to subsection 5 was found where the defendant provided supplies to the plaintiff on multiple occasions and certified the materials complied with Michigan Department of Transportation requirements. *Elsey* at 148. The *Elsey* Court reasoned that the defendant's certification that the materials complied with Michigan's testing standards indicated a "deliberate action calculated to make its product available to the Michigan market." *Id.* Accordingly, the Court concluded that the requirements of subsection 5 of the long arm statute had been met and that the defendant was subject to suit in Michigan. *Elsey* at 148.

Our case is distinguishable because with the multiple orders P. D. George took great care to ensure that the supplies were furnished to Excelda in Missouri, not Michigan. P. D. George did not induce the sale by asserting compliance with any Michigan standard, nor did it advertise in Michigan or otherwise act to create a market for its product in Michigan. In fact, the product obtained from P. D. George was diluted and packaged by Excelda and then shipped to Starbrite in Florida and there is no indication that the end product was ever marketed in Michigan. Accordingly, the pivotal characteristics of *Elsey* are not found in the instant case, and thus, *Elsey* is inapposite.

Regarding claims under subsection 1 of the long arm statute, both Excelda and Starbrite argue that telephone calls and a visit from a P. D. George representative constitute transacting business

within the state, enabling the courts of this state to exercise personal jurisdiction over P. D. George. MCL 600.715(1); MSA 27A.715(1). While it is true that P. D. George made these contacts with Michigan, it is clear that the telephone calls and the visit occurred after Excelda received the materials and the product problem developed. As counsel for Excelda acknowledged:

> During that process there were problems. Telephone calls back and forth. In fact, a meeting that then—they came here and had a meeting to try and locate and determine what the problem of this formulation may have been.

We hold these contacts to be insufficient to support the exercise of personal jurisdiction because contact with this state did not occur until after the problem arose. Our Supreme Court stated in *Witbeck v Bill Cody's Ranch Inn,* 428 Mich 659, 680; 411 NW2d 439 (1987):

> To be subject to personal jurisdiction, a nonresident defendant's contacts with the forum state must exist at the time the cause of action arose or, at the very least, before or at the time of commencement of the action.

The policy of encouraging remediation would be thwarted if P. D. George were punished for having made a visit to Michigan or telephone calls to resolve a problem. The federal District Court for the Western District of Michigan, in *Andrews Univ v Robert Bell Industries, Ltd,* 685 F Supp 1015, 1020 (WD Mich, 1988), agreed:

> [S]uch "after the fact" contacts cannot—either as a matter of logic or as a matter of law—provide a basis for personal jurisdiction.

Accordingly, we hold that P. D. George's attempts to remedy the problem after it arose do not constitute "transaction of any business within the state" for purposes of subsection 1 of the long arm statute.

Excelda also asserts that, by filing a collection complaint against Excelda in Michigan before this action was brought, P. D. George was estopped from asserting it did not transact business in Michigan. Contrary to Excelda's contention, the collection suit does not serve to establish personal jurisdiction because the instant cause of action does not arise out of the collection suit. In *Mozdy,* this Court stated that to determine whether sufficient minimum contacts exist between a nonresident defendant in Michigan to support exercising limited personal jurisdiction, the cause of action must arise from the defendant's activities in the state relative to that cause of action. P. D. George's collection suit is irrelevant to establishing plaintiff's and cross-plaintiff's cause of action against P. D. George. Accordingly, the collection suit cannot be used to establish the necessary minimum contacts to establish jurisdiction.

We conclude, therefore, that the rules of statutory construction do not support the exercise of jurisdiction over P. D. George. *Mozdy, supra* at 358.

Moreover, with regard to the second part of the *Mozdy* test, i.e., the constitutionality of exercising personal jurisdiction, we find that the exercise of limited personal jurisdiction in these circumstances would violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution. In *Witbeck, supra,* our Supreme Court observed that the "constitutional touchstone" of the Due Process Clause of the Fourteenth Amendment "is whether the defendant

purposely established 'minimum contacts' in the forum state 'such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' " *Id.* at 666.

In considering minimum contacts, the following tests apply:

> Whether sufficient minimum contacts exist between a nonresident defendant and Michigan to support exercising limited personal jurisdiction is determinable by a three-part test. First, the defendant must have purposefully availed itself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this state's laws. Second, the cause of action must arise from the defendant's activities in the state. Third, the defendant's activities must be so substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable. *Moore v McFarland,* 187 Mich App 214, 218; 466 NW2d 309 (1991); *Walter [v M Walter & Co, Inc,* 179 Mich App 409, 413; 446 NW2d 507 (1989).] [*Mozdy, supra* at 359.]

After an examination of the record, we conclude that P. D. George's contacts with Michigan were insufficient to satisfy the minimum-contacts requirement of the Due Process Clause. P. D. George did not purposely avail itself of the privilege of conducting activities in Michigan and affirmatively acted to avoid being haled into Michigan courts. P. D. George crafted its sales contract to confine its exposure to litigation to Missouri and took measures to avoid contact with Michigan. The contract of sale to Excelda was calculated to avoid exposure to litigation outside Missouri. Accordingly, we conclude that P. D. George actively attempted to reduce the foreseeability of litigation in foreign jurisdictions and that it could not have reasonably anticipated being haled into court in Michigan.

*Grier v Sherrill Machinery Co,* 175 Mich App 655, 659-660; 438 NW2d 280 (1989).

In addition to the foreseeability and purposeful availment analysis, the *Grier* Court also set forth additional factors to be considered in determining if personal jurisdiction should be exercised. The *Grier* Court directed:

> "Other factors" to be weighed in appropriate cases would include "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies . . . ." [*Id.* at 661 (citation omitted).]

A consideration of these factors does not militate toward the exercise of personal jurisdiction over P. D. George.

Both Excelda and Starbrite discount the burden, inconvenience, and inefficiency that litigating in Michigan would occasion P. D. George by asserting that modern communications and transportation reduce the disadvantage of defending a lawsuit in a remote forum. Yet, they are cognizant of the burden in litigating at a great distance because they have made strenuous efforts to avoid litigating in Missouri where there is no question that P. D. George would be amenable to process. Surely, were they to litigate there, they could utilize the modern communication and transportation system to which they make reference in presenting their case. Further, because the focus of this contract action appears to be P. D. George's derelictions, the efficiency factor favors not litigating in Michigan because the crucial witnesses would be in

Missouri. The consideration of these factors supports P. D. George's argument that Michigan lacks personal jurisdiction over it.

With regard to Michigan's interest in adjudicating this matter, this state has little interest in the outcome of the litigation between Starbrite, a Florida corporation, and P. D. George, a Delaware corporation. While there may be some interest in serving Excelda, a Michigan corporation, that interest is minimal because the raw material supplied by P. D. George in Missouri, diluted and packaged by Excelda, and ultimately marketed by Starbrite, has not been alleged to have found its way back to Michigan consumers.

Finally, we are informed of no competing social policies between Michigan and Missouri such as there might be if this were a tort case where the laws of the competing jurisdictions were more or less amenable to a particular type of claim. Accordingly, this factor is inconsequential especially because the claims against P. D. George, as well as Starbrite's claims against Excelda, can be litigated in Missouri as well as in Michigan.

On the basis of lack of personal jurisdiction, we reverse the trial court's denial of P. D. George's motion for summary disposition with regard to the claims of Starbrite and the cross-claims of Excelda.

Reversed.