COMMISSIONER OF INSURANCE v ALBINO

Docket No. 194261. Submitted December 3, 1996, at Detroit. Decided September 30, 1997, at 9:00 A.M. Leave to appeal denied, 456 Mich 905.

The Commissioner of Insurance brought an action in the Ingham Circuit Court in his capacity as rehabilitator of Confederation Life Insurance Company (CLIC), a mutual insurance company organized under the laws of Canada with its principal office in Toronto, Ontario, Canada, against George R. Albino and other officers, directors, and individual accountants of CLIC and Ernst & Young-Canada (E & Y-Canada), a partnership of Canadian chartered accountants headquartered in Toronto, who audited the financial statements of CLIC for 1991, 1992, and 1993 and gave a favorable opinion regarding CLIC's financial position. The plaintiff's action against E & Y-Canada alleged breach of contract, professional malpractice, and fraud with regard to the audits, which allegedly concealed the wrongful removal by CLIC of $600 million from a trust required by Michigan law to be held for the benefit of, among others, Michigan policyholders of CLIC. E & Y-Canada moved for dismissal, asserting that Michigan courts did not have jurisdiction over it because it had no contacts with Michigan. The court, Thomas L. Brown, J., denied the motion. E & Y-Canada appealed by leave granted from the court's order.

The Court of Appeals held:

1. Although E & Y-Canada had no physical presence in Michigan, it did business systematically for CLIC, a Michigan resident or domicilary by virtue of MCL 500.431a; MSA 24.1431(a), knowing that its audit would be relied upon by the Commissioner of Insurance and residents of Michigan, and knowing that CLIC could not do business in Michigan without E & Y-Canada's audit pursuant to Michigan law.

2. This case falls within the scope of the Michigan long-arm statute regarding limited personal jurisdiction over a nonresident partnership because E & Y-Canada caused acts to be done and consequences to occur in Michigan as contemplated in MCL 600.725(2); MSA 27A.725(2).

3. Sufficient minimum contacts exist between E & Y-Canada and Michigan to support Michigan's exercise of limited personal juris-

diction over it. E & Y-Canada's knowing and intentional contacts with Michigan by purposefully directing its audits at Michigan were so substantial as to render the exercise of jurisdiction over it just and fair. E & Y-Canada chose to do business in Michigan. The exercise of jurisdiction over E & Y-Canada is reasonable and comports with traditional notions of fair play and substantial justice. The exercise of jurisdiction over E & Y-Canada does not violate the Due Process Clause of the Untied States Constitution, US Const, Am XIV.

Affirmed and remanded.

JANSEN, P.J., dissenting, stated that E & Y-Canada did not have sufficient minimum contacts with Michigan to support the assertion of limited personal jurisdiction over it, that the exercise of limited personal jurisdiction in this case constitutes a violation of the Due Process Clause, US Const, Am XIV, and that the order of the trial court should be reversed.

1. COURTS — JURISDICTION — APPEAL — STANDARD OF REVIEW.

The appellate standard of review when examining jurisdictional rulings is de novo; the plaintiff bears the burden of establishing jurisdiction over the defendant, but need only make a prima facie showing of jurisdiction to defeat a motion for summary disposition; the affidavits and documentary evidence submitted by the parties must be considered and all factual disputes for the purpose of deciding the motion must be resolved in the plaintiff's favor (MCR 2.116[G][5]).

2. PARTNERSHIP — LONG-ARM JURISDICTION.

A state court may exercise limited personal jurisdiction over a nonresident partnership or limited partnership that has done or caused any act to be done, or consequences to occur, in the state resulting in an action for tort (MCL 600.725[2]; MSA 27A.725[2]).

3. COURTS — LONG-ARM JURISDICTION.

A court in determining whether sufficient minimum contacts exist between a nonresident defendant and Michigan to support Michigan's exercise of limited personal jurisdiction must find that the defendant purposefully availed itself of the privilege of conducting activities in Michigan so as to invoke the benefits and protections of this state's laws, that the cause of action arose from the defendant's activities in the state, and that the defendant's activities were so substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable, i.e., that the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.

4. COURTS — LONG-ARM JURISDICTION — WORDS AND PHRASES — PURPOSEFUL AVAILMENT.

"Purposeful availment" for purposes of a state court's exercise of limited personal jurisdiction over a nonresident defendant does not entail random, fortuitous, or attenuated contacts, but is something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct that can be properly regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities.

5. COURTS — LONG-ARM JURISDICTION — REASONABLENESS.

A court in determining whether sufficient minimum contacts exist between a nonresident defendant and the state to support the court's exercise of limited personal jurisdiction must consider the following factors in determining whether the exercise of jurisdiction over the defendant is reasonable: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of the controversies, and the shared interest of the several states in furthering fundamental substantive social policies.

*Bodman, Longley & Dahling, LLP* (by *James J. Walsh* and *Sarah Heisler Gidley*), and *Cadwalader, Wickersham & Taft* (by *Gregory M. Petrick* and *Jane K. Rushton*), for the plaintiff.

*Butzel Long* (by *Philip J. Kessler* and *Timothy E. Galligan*) (*Davis Polk & Wardwell,* by *Daniel F. Kolb, Robert R. Strang,* and *Jerome G. Snider,* and *Sutherland, Asbill & Brennan,* by *John A. Chandler, Elizabeth Vranicar Tanis,* and *Amelia Toy Rudolph,* of Counsel), for Ernst & Young-Canada.

Before: JANSEN, P.J., and SAAD and M. D. SCHWARTZ*, JJ.

SAAD, J.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

I

NATURE OF THE CASE

This case arises out of the financial collapse of Confederation Life Insurance Company (CLIC), the largest insurance insolvency in North American history.

A foreign partnership, Ernst & Young-Canada (E & Y-Canada), challenges the Michigan courts' power to adjudicate a breach of contract and tort case brought against it by the Michigan Commissioner of Insurance (Insurance Commissioner or IC). The IC charged E & Y-Canada, as the public auditor of CLIC, with breach of contract, professional malpractice, and fraud in submitting fraudulently deceptive and misleading audits to the IC. E & Y-Canada's audits allegedly concealed the wrongful removal by CLIC of $600 million from a trust required by Michigan law to be held for the benefit of, among others, Michigan policyholders of CLIC.

E & Y-Canada says that it has no physical presence in Michigan and that Michigan courts lack jurisdiction to adjudicate the IC's claims against it because it lacks sufficient contacts or other nexus with Michigan. The IC, on the other hand, says that Michigan courts may exercise limited personal jurisdiction[1] over E & Y-Canada consistent with Michigan's long-arm statute, MCL 600.725; MSA 27A.725, and the Due Process Clause of the United States Constitution, US Const, Am XIV. The IC rests his jurisdictional case primarily on his allegation that E & Y-Canada knew that its fraudulently deceptive audits would be submitted to and relied upon by the IC and Michigan policyholders.

---

[1] We use the terms "personal jurisdiction" and "in personam jurisdiction" interchangeably in this opinion.

The IC further supports the assertion of personal jurisdiction on the grounds that (1) CLIC is a Michigan resident by virtue of using Michigan as its state of entry to do business in the United States, (2) E & Y-Canada knew its audit of CLIC was a statutory predicate to CLIC's doing business in Michigan and the United States, and that (3) E & Y-Canada conducted its 1991, 1992, and 1993 audits with this Michigan corporation with full knowledge of applicable law regulating the insurance industry, and with knowledge of the catastrophic financial losses its accounting practices would cause Michigan residents/policyholders.

The circuit court held that it has jurisdiction to hear the IC's case against E & Y-Canada. In this interlocutory appeal, we affirm and remand for further proceedings.

II

FACTS

CLIC, which is not a party to this matter, was a mutual insurance company organized under the laws of Canada, with its principal office in Toronto, Ontario, Canada. CLIC did business in Canada, Michigan, elsewhere in the United States, and in the United Kingdom. Since 1964, Michigan has been the "state of entry"[2] for CLIC in the United States.

Michigan's Insurance Code permits an alien insurer to use Michigan as a "state of entry" to conduct business throughout the United States by qualifying as an insurer here; this process requires an alien insurer to establish a trust account and provide extensive documents and records to the IC. MCL 500.431a-c; MSA

---

[2] See MCL 500.431a; MSA 24.1431(a).

24.1431(a)-(c). The purpose of the trust account is to ensure that, if the insurer becomes insolvent, there will be sufficient assets available in the United States to satisfy United States policyholders' claims. The Insurance Commissioner is the primary regulator of alien insurance companies (including CLIC) that operate in Michigan. See MCL 500.222-500.224, 500.403, 500.404, 500.411; MSA 24.1222-24.1224, 24.1403, 24.1404, 24.1411.

In August 1994, the Superintendent of Financial Institutions Canada (CLIC's primary Canadian regulator) took control of CLIC's assets, pursuant to Canadian law. Liquidation proceedings are ongoing in Canada. On August 16, 1994, an order of rehabilitation was entered in Michigan, in favor of the Michigan Insurance Commissioner, CLIC's primary United States regulator. See *Comm'r of Ins v Arcilio*, 221 Mich App 54, 57; 561 NW2d 412 (1997).

Defendant E & Y-Canada is a partnership of Canadian chartered accountants (the Canadian equivalent of CPAs) headquartered in Toronto. E & Y-Canada audited the financial statements of CLIC for 1991, 1992, and 1993, and gave a favorable opinion regarding CLIC's financial position. That opinion was contained in a letter to CLIC's policyholders and directors that appeared in CLIC's annual statements. E & Y-Canada has never done business in Michigan, has no employees or property in Michigan, and has provided no auditing or accounting services in Michigan. CLIC engaged E & Y-Canada in Canada and paid E & Y-Canada in Canada. E & Y-Canada never directly sent any of its audit opinions or reports to anyone in Michigan, including the Michigan Insurance Bureau. Yet, it

knew that its audit opinions would be sent to and relied upon by the IC and Michigan policyholders.

The Michigan Insurance Code requires insurers (including alien insurers, see MCL 500.1005; MSA 24.11005) to obtain statements from their accountants that are to be filed with the IC. MCL 500.1009(2); MSA 24.11009(2) also requires an insurer to obtain a "letter of awareness" from its accountant:

> The insurer shall obtain a letter from the insurer's independent public accountant and shall file a copy with the commissioner stating that the independent public accountant is aware of the insurance code's provisions and the rules and regulations of the state of domicile's insurance department that relate to accounting and financial matters and affirming that he or she will express his or her opinion on the financial statements as to whether they conform to the accounting practices prescribed or otherwise permitted by that department, specifying the exceptions as he or she believes appropriate.

This "letter of awareness" is to be filed with the IC by the insurer.

On November 27, 1992, E & Y-Canada issued its "letter of awareness" to the board of directors of CLIC. That letter stated that the "letter is furnished solely for you to comply with Section 1009(2) of the Michigan Insurance Code and should be used for no other purpose."

We also note CLIC's December 31, 1992, Audit Profile, *authored by* E & Y-Canada, which states in relevant part:

> In accepting an audit engagement, *we assume a responsibility to the policyholders of Confederation Life, the Superintendent of Financial Institutions and other foreseeable parties who rely on the information presented in the*

*financial statements* of Confederation Life Insurance Company and its subsidiaries. Our primary objective in fulfilling this responsibility is to discharge our statutory obligation under the Insurance Companies Act which requires us to issue an audit opinion to the policyholders and directors of the Company. [Emphasis added.]

This lawsuit was filed in the Ingham Circuit Court by the IC, in his capacity as rehabilitator,[3] on June 28, 1995. Plaintiff's theory is that CLIC looted the trust fund established in Michigan in order to cover losses in other parts of CLIC's business. Plaintiff named as defendants the officers and directors of CLIC, CLIC's individual accountants, and the accounting partnership that audited CLIC's books and finances. According to plaintiff, E & Y-Canada knew that CLIC was diverting funds from the Michigan trust fund to cover losses elsewhere and knew that CLIC was on the brink of financial collapse, and nevertheless repeatedly represented to policyholders and to the IC that CLIC was financially sound. Plaintiff claims that CLIC replaced trust assets with worthless promissory notes of a CLIC subsidiary, something that E & Y-Canada should have known.

Defendant E & Y-Canada moved for dismissal, asserting that Michigan courts have no jurisdiction over it because E & Y-Canada has no contacts with Michigan. E & Y-Canada argued that Michigan did not obtain jurisdiction over it simply because E & Y-

---

[3] Pursuant to Michigan's insurers rehabilitation and liquidation act, MCL 500.8101 *et seq.*; MSA 24.18101 *et seq.*, the Michigan Insurance Commissioner may petition the court for an order of rehabilitation for a delinquent insurance company doing business in Michigan. If the order is granted, the insurance company is placed in rehabilitation, and the IC is empowered to operate, liquidate, or dissolve the company for the benefit of the policyholders. *Id.*

Canada's client (CLIC) did business in Michigan and filed opinions with the Michigan Insurance Bureau. E & Y-Canada also argued that it did not matter that E & Y-Canada could foresee that these documents would be filed in Michigan, because the conduct and contacts of E & Y-Canada determine personal jurisdiction, not the conduct or contacts of a third party.

Plaintiff argued that E & Y-Canada worked for a *Michigan* resident, because CLIC became a Michigan domicilary by virtue of MCL 500.431a; MSA 24.1431(a). Plaintiff also argued that the annual statements issued by E & Y-Canada were directed to all policyholders, including those in Michigan, that E & Y-Canada well knew that its audit work would be relied upon in Michigan, and that E & Y-Canada agreed to comply with Michigan's Insurance Code and its duties thereunder in order to obtain CLIC's business.

The circuit court ruled in favor of plaintiff on April 1, 1996, finding that E & Y-Canada had "every reason to believe that that audit is going to come to the attention of the Insurance Commissioner in the State of Michigan, who is supervising their activities in this country through the State of Michigan. And they have every reason to believe that that ought to be accurate. If it's not, they ought to be able to respond."

We granted E & Y-Canada's interlocutory application for leave to appeal and we now affirm and remand for further proceedings.

III

ANALYSIS

E & Y-Canada contends here that Michigan courts do not have the power to adjudicate the IC's claims against it because to do so would violate the Due Pro-

cess Clause of the United States Constitution as interpreted by the United States Supreme Court in *World-Wide Volkswagen Corp v Woodson*, 444 US 286; 100 S Ct 559; 62 L Ed 2d 490 (1980), *Burger King Corp v Rudzewicz*, 471 US 462; 105 S Ct 2174; 85 L Ed 2d 528 (1985), and *Asahi Metal Industry Co, Ltd v Superior Court of California, Solano Co*, 480 US 102; 107 S Ct 1026; 94 L Ed 2d 92 (1987). In support of its assertion, E & Y-Canada correctly points out that it has no physical presence in Michigan and thus it argues that the "minimum contacts" requirement of the Due Process Clause is not met. We disagree.

In support of the view that Michigan courts may exercise limited in personam jurisdiction over E & Y-Canada arising out of E & Y-Canada's audit of CLIC, the IC correctly points out that E & Y-Canada did business systematically (annual audits for three years) for a Michigan resident,[4] knowing that its audit of CLIC would be relied upon by the IC and residents of Michigan, and knowing that CLIC could not do business in Michigan without E & Y-Canada's audit pursuant to Michigan law.

To determine whether jurisdiction exists to litigate this dispute in Michigan, we look to (1) the Michigan Supreme Court's recent reiteration of the principles governing (a) appellate review of, and (b) the basis for, limited personal jurisdiction over nonresident corporations, and (2) the United States Supreme Court's test to determine whether the exercise of jurisdiction complies with the Due Process Clause of the United States Constitution.

---

[4] CLIC became a Michigan domicilary by virtue of MCL 500.431a; MSA 24.1431(a) because it used Michigan as its state of entry.

A

APPELLATE REVIEW

In *Starbrite Distributing, Inc v Excelda Mfg Co*, 454 Mich 302; 562 NW2d 640 (1997), the Michigan Supreme Court reiterated the analytical framework for properly exercising limited personal jurisdiction. *Starbrite* also cited with approval the Court's earlier decision in *Jeffrey v Rapid American Corp*, 448 Mich 178; 529 NW2d 644 (1995), which set forth the appropriate standard of review and procedural rules for the proper disposition of jurisdictional questions:[5]

> The appellate standard of review when examining jurisdictional rulings is de novo. *Williams v Bowman Livestock Equipment Co*, 927 F2d 1128, 1130 (CA 10, 1991). The plaintiff bears the burden of establishing jurisdiction over the defendant, *Modzy v Lopez*, 197 Mich App 356, 359; 494 NW2d 866 (1992), but need only make a prima facie showing of jurisdiction to defeat a motion for summary disposition. *Bowman Livestock* at 1131. The affidavits, together with any other documentary evidence submitted by the parties, must be considered by the court. MCR 2.116(G)(5). All factual disputes for the purpose of deciding the motion are resolved in the plaintiff's (nonmovant's) favor. See *Wiles v B E Wallace Products Corp*, 25 Mich App 300, 303-305; 181 NW2d 323 (1970); *Bowman Livestock* at 1130. [*Jeffrey, supra* at 184.]

Accordingly, here we ask whether the circuit court properly determined that it could exercise limited personal jurisdiction over E & Y-Canada on the basis of claims asserted by the IC. To answer this question, we first review Michigan's long-arm statute for limited personal jurisdiction over partnerships, MCL 600.725;

---

[5] *Starbrite, supra* at 309, n 5, and at 311, n 7.

MSA 27A.725, then our Supreme Court's decision in *Starbrite*, and the United States Supreme Court's decisions in *World-Wide*, *Burger King*, and *Asahi*.

B

LONG-ARM STATUTE: LIMITED PERSONAL JURISDICTION OVER NON-RESIDENT PARTNERSHIPS

We look first to the portion of Michigan's long-arm statute that addresses limited personal jurisdiction over a nonresident partnership. *Starbrite, supra* at 305-306. MCL 600.725; MSA 27A.725 provides:

> The existence of any of the following relationships between a partnership or limited partnership or an agent thereof and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such partnership or limited partnership and to enable such courts to render personal judgments against such partnership or limited partnership arising out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within the state.
>
> (2) *The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.*
>
> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.
>
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
>
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant. [Emphasis added.]

Here, E & Y-Canada knew that (1) CLIC could not do business in Michigan (or in the United States for that matter) without using Michigan as its state of entry and without E & Y-Canada's audit, (2) the IC was the United States regulator of CLIC, (3) the IC relied on E &

Y-Canada's audit as assurance of CLIC's financial integrity, (4) policyholders in Michigan relied on E & Y-Canada's 1991, 1992, and 1993 audits as assurance of CLIC's financial integrity, and (5) CLIC would submit E & Y-Canada's audits to the IC. E & Y-Canada also directed its audits to CLIC, which it knew to be, by statute, a Michigan resident, for transmittal to the IC—CLIC's regulator—and to the Michigan policyholders of CLIC. Accordingly, E & Y-Canada caused acts to be done and consequences to occur in Michigan in every meaningful sense contemplated by MCL 600.725(2); MSA 27A.725(2). Thus, this case falls within the scope of the Michigan long-arm statute.

C

DUE PROCESS

We now determine if the exercise of limited personal jurisdiction here satisfies the Due Process Clause as interpreted by the United States Supreme Court in *Int'l Shoe Co v Washington*, 326 US 310; 66 S Ct 154; 90 L Ed 95 (1945), *World-Wide, supra, Burger King, supra,* and *Asahi, supra.*

(a) MINIMUM CONTACTS

The pivotal question here is not whether E & Y-Canada had physical contact with the forum state (Michigan); it is, instead, whether E & Y-Canada purposefully established "minimum contacts"—a sufficient nexus with Michigan—so that requiring E & Y-Canada to defend itself in a suit in Michigan does not offend traditional notions of "fair play and substantial justice." *Int'l Shoe, supra* at 320. As our Michigan Supreme Court stated in *Jeffrey:*

Jurisdiction may not be avoided simply because the corporate defendant has never physically been present in the forum state.

"[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." [*Jeffrey, supra* at 188, quoting *Burger King, supra* at 476.]

In determining whether sufficient minimum contacts exist between a defendant and Michigan to support Michigan's exercise of limited personal jurisdiction, the court must apply a three-pronged test:

" 'First, the defendant must have purposefully availed itself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this state's laws. Second, the cause of action must arise from the defendant's activities in the state. Third, the defendant's activities must be so substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable.' " [*Starbrite, supra* at 309, quoting *Jeffrey, supra* at 186, quoting *Mozdy v Lopez*, 197 Mich App 356, 359; 494 NW2d 866 (1992).]

In *Starbrite, supra* at 309-310, the Court discussed "purposeful availment" as follows:

" ' "[P]urposeful availment" is something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can be properly regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities. The defendant will have reason to foresee being "haled before" a Michigan court.' " [*Jeffrey,*

*supra* at 187, quoting *Khalaf v Bankers & Shippers Ins Co*, 404 Mich 134, 153-154; 273 NW2d 811 (1978).]

However, the " 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . ." *Burger King* at 475 (citations omitted). The Supreme Court in *Burger King* explained that "where the defendant 'deliberately' has engaged in significant activities within a State, *or has created 'continuing obligations' between himself and residents of the forum,* he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well. [*Id.* at 475-476 (citations omitted).]"

Here, E & Y-Canada's contacts with Michigan were not "random," "fortuitous," or "attenuated." Rather, as a self-styled expert in insurance audits, with a global reach, E & Y-Canada quite purposefully directed its audits at Michigan (including Michigan's insurance regulator, the Insurance Commissioner) and purchasers of insurance products (Michigan citizens). E & Y-Canada dealt, year after year, with a statutory corporate citizen (CLIC) knowing that such a contractual relationship with CLIC was necessary for CLIC to do business in Michigan and, in turn, made possible handsome fees for E & Y-Canada. Moreover, under the IC's theory of the case, it was the E & Y-Canada audits themselves that precipitated the fraud on Michigan citizens.[6]

---

[6] The dissent would conclude that E & Y-Canada's own actions directed toward Michigan were insufficient to constitute minimum contacts. This conclusion cannot be supported where E & Y-Canada, a sophisticated partnership, was fully aware of the relevant requirements of Michigan insurance law, authored and sent a "letter of awareness" to comply with these

For E & Y-Canada to argue that because its audits were physically transmitted into Michigan by CLIC, E & Y-Canada had no "contact" with Michigan would be similar to an arms manufacturer disclaiming any contact with Michigan while knowingly providing Scud missiles to someone launching them into Michigan. Here, E & Y-Canada not only knew what was being directed at Michigan and its residents but knew full well the target and the damage estimates. E & Y-Canada purposefully availed itself of this business opportunity in Michigan in 1991, 1992, and 1993.

Further, to paraphrase *Starbrite, supra* at 310-311, although E & Y-Canada did not solicit business in Michigan, it certainly chose to do business in Michigan. Also, just as *Starbrite, supra* at 312, distinguished its holding from that of *Asahi, supra,* we too note that E & Y-Canada did *not* merely place its audits "into the stream of commerce, not having further knowledge regarding where that product might end up." *Id.* at 312. Rather, E & Y-Canada purposefully directed its audit at the IC and Michigan policyholders "which is qualitatively different than the mere act of placing its product into the stream of commerce." *Id.*

With regard to the second prong of the minimum-contacts test (cause of action arose from the defendant's activities in the state), the Insurance Commissioner's claim arises out of the very conduct that the IC claims caused the financial harm to Michigan citizens and that is inextricably intertwined with the E & Y-Canada audits. The cause of action arises from E & Y-Canada's activities in Michigan. We therefore con-

---

requirements, and expressly assumed (in its audit) an obligation to the CLIC policyholders, including those located in Michigan.

clude that E & Y-Canada's knowing and intentional contacts with Michigan were so substantial as to render the exercise of jurisdiction over E & Y-Canada fair and just.

### (b) OTHER FACTORS

Once these two prongs have been met, the third prong of the minimum-contacts test requires us to determine whether exercise of jurisdiction over the defendant is "reasonable"—that is, whether Michigan's exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Starbrite, supra* at 313. " 'Where a defendant who purposefully has directed [its] activities at forum residents seeks to defeat jurisdiction, [it] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.' " *Id.* at 313, quoting *Burger King, supra* at 477.

The Supreme Court has held that a court must consider the following factors in determining the reasonableness of jurisdiction: "[T]he burden on the defendant, . . . the forum State's interest in adjudicating the dispute, . . . the plaintiff's interest in obtaining convenient and effective relief, . . . the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies . . . ."[7] *World-Wide, supra* at 292; *Starbrite, supra* at 313.

We therefore proceed to consider the "other factors" of *World-Wide* and *Starbrite*.

---

[7] Indeed, these considerations may reasonably establish personal jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. *Burger King, supra* at 477.

### i. THE DEFENDANT'S BURDEN

The burden placed on the defendant by litigating in a foreign forum should always be a "primary concern" in due process analysis. *World-Wide, supra* at 292. However, if the defendant's actions suggest that he could reasonably foresee being haled into court in a foreign forum, the burden of litigating in that foreign forum is minimal. *Burger King, supra* at 473-474. A partnership purposefully availing itself of activities within a certain state has "clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State." *World-Wide, supra* at 297.

As discussed previously, E & Y-Canada purposefully availed itself of the benefits and privileges of doing business in Michigan. E & Y-Canada knew that CLIC was domiciled in Michigan for the purpose of selling insurance; accordingly, in auditing CLIC, E & Y-Canada knew that it was providing services to a Michigan resident. E & Y-Canada provided CLIC with an "awareness letter" knowing that its audit reports would be forwarded to the Michigan Insurance Bureau. Furthermore, E & Y-Canada addressed its audit reports "To the Policyholders," many of whom are Michigan residents. These actions suggest that E & Y-Canada could reasonably foresee being haled into court in Michigan and that the burden of doing so does not render jurisdiction unreasonable.

The Supreme Court has indicated that alien defendants should be treated with a more exacting scrutiny that United States defendants. *Asahi, supra* at 114. The *Asahi* Court found that a defendant's burden in

traversing the Pacific Ocean (from Japan to California) and learning a foreign nation's legal system weighed heavily in favor of denying jurisdiction. Here, unlike *Asahi,* exercising jurisdiction over E & Y-Canada does not offend traditional notions of fair play and substantial justice. The distance that E & Y-Canada must travel between Ontario and Michigan is not nearly the distance that the defendant in Asahi would have been required to travel. The burdens placed upon E & Y-Canada to defend itself in the United States legal system are also comparatively slight. E & Y-Canada is an integral part of an international organization of accounting firms that aggressively markets and promotes the services of its members throughout the world. It is not unduly burdensome to subject a member of such a world-wide organization to jurisdiction in Michigan where it has done business and created consequences to Michigan residents on a continuing basis.

In assessing the burden to E & Y-Canada, we also consider the accounting profession in which E & Y-Canada is engaged—the United States Supreme Court has highlighted the obligations of a certified public accountant:

> An independent certified public accountant performs a different role. By certifying the public reports that collectively depict a corporation's financial status, *the independent auditor assumes a public responsibility transcending any employment relationship with the client.* The independent public accountant performing this special function owes ultimate allegiance to the corporation's creditors and stockholders, as well as to the investing public. *This "public watchdog" function demands that the accountant maintain total independence from the client at all times and requires complete fidelity to the public trust.* [*United*

*States v Arthur Young & Co*, 465 US 805, 817-818; 104 S Ct
1495; 79 L Ed 2d 826 (1984) (emphasis added).]

We therefore conclude that the burden on defendant E & Y-Canada is not excessive.

### ii. THE INTERESTS OF THE PLAINTIFF AND THE STATE

Normally, when minimum contacts are established, the interests of the plaintiff and the forum state will justify even the serious burdens placed on the alien defendant. *Asahi, supra* at 114. No state or province has a stronger interest than Michigan in the resolution of the present controversy. This state has a strong public policy interest in holding professionals who agree to serve as accountants for Michigan entities to their common-law and statutory responsibilities. Similarly, when such accountants disregard those responsibilities, the IC has a substantial interest in holding them accountable in this state to injured policyholders. The underlying purpose behind Michigan's comprehensive insurance regulations would be eviscerated if an accounting firm could voluntarily provide misleading financial information about an insurer to the IC and escape liability in this state.

Furthermore, as discussed in footnote 3, *supra*, the IC is charged with overseeing and regulating all insurance companies that do business in Michigan, for the benefit of policyholders. MCL 500.222; MSA 24.1222. See also MCL 500.200 *et seq.*; MSA 24.1200 *et seq.*, and MCL 500.402 *et seq.*; MSA 24.1402 *et seq.* In the context of an alien insurance company, the IC in reality acts on behalf of all United States policyholders. Similarly, after an insurance company has entered rehabilitation, the IC has extensive obligations to rehabilitate or dissolve the company, and to reduce the risk of

loss to policyholders. See MCL 500.8101; MSA 24.18101. Thus, the interest of the plaintiff IC, in his capacity as regulator for all policyholders in the United States, is substantial.

### iii. THE SHARED INTERESTS OF THE SEVERAL STATES

The *World-Wide* Court also held that we should consider the "shared interest of the several States," in addition to the forum state, in the efficient judicial resolution of the dispute and the advancement of substantive social policies. *World-Wide, supra* at 292. This calls for us to consider the procedural and substantive policies of other states whose interests are affected by our assertion of jurisdiction over E & Y-Canada. Michigan's sister states not only share its interest in regulating the business of insurance, but look to it to deal with the problems that result from the insolvency of an insurer domiciled in Michigan. Congress has determined, by enactment of the McCarran-Ferguson Act, 15 USC 1011 *et seq.*, that regulation of insurance rests with the states. Thus, holding E & Y-Canada accountable in Michigan for the harm it has caused CLIC's United States policyholders is consistent with the policies embodied in our state-based scheme of insurance regulation.

This same interest has been recognized by at least one other state. In a suit brought in New Jersey by United States policyholders against CLIC, a federal district court, in an unpublished opinion, abstained from hearing a claim against CLIC because doing so would disrupt Michigan's important and complex insurance regulatory system. *Glushakow v Confederation Life Ins Co*, No. 94-4201, 1994 US Dist LEXIS 20325 (D NJ, December 5, 1994). At the request of Michigan's Insur-

ance Commissioner, the *Glushakow* court stayed the plaintiffs' action, reasoning that Michigan is the most efficient and inexpensive forum in which to litigate claims arising out of CLIC's collapse:

> The raison d'etre of a state rehabilitation or liquidation proceeding is to impose order on chaos by bringing the assets and liabilities of the ailing company within a single proceeding. Collateral suits in other fora must perforce be disruptive. Finally, as the extensive state regulation recognizes, the security of insurance companies is vitally important to the economic well-being of a large number of individual citizens. Consequently, the public policy ramifications of decisions regarding insurance companies will often transcend the importance of the case at bar.

The *Glushakow* court also recognized that if individual state-law claims were allowed to proceed, Michigan's rehabilitation proceeding might be "aborted by the liquidation of the insurance companies with a consequent waste of judicial resources." These considerations suggest that the "several States" have a manifest interest in litigating CLIC's collapse in Michigan.

IV

OTHER JURISDICTIONS

We also find guidance in cases from other jurisdictions that have addressed personal jurisdictional issues over nonresident accountants. In *United Bank of Kuwait, PLC v James M Bridges, Ltd*, 766 F Supp 113 (SD NY, 1991), the plaintiff, who had relied to its detriment on an audit of a third party, brought an accountant malpractice claim in New York federal district court against the Virginia accountant and his firm. Though the court granted the defendants'

motion to dismiss, its reasoning supports our exercise of jurisdiction over E & Y-Canada:

> In general, before an accountant may be held liable in negligence to noncontractual parties who rely to their detriment on inaccurate financial reports, the accountant must have been aware the reports were to be used for a particular purpose, in furtherance of which a known party was intended to rely, and there must have been some conduct on the part of the accountant which evinces the accountant's understanding of that party's reliance. [*Id.* at 177.]

Similarly, in *Reingold v Deloitte Haskins & Sells*, 599 F Supp 1241 (SD NY, 1984), the New York federal district court exercised personal jurisdiction over the Australian office of Deloitte Haskins & Sells:

> The plaintiffs have provided evidence sufficient to establish *prima facie* that DH&S (Aus.) knew or should have known on November 12, 1980, when it signed and issued the 1980 Ferrovanadium audit [in Australia], that the audit would be incorporated in an annual report and in a United States securities filing. . . . By issuing the 1980 audit, the Australian accountants subjected themselves to this Court's jurisdiction for causes of action arising out of that audit. [*Id.* at 1259.]

We have also carefully reviewed *Young v Federal Deposit Ins Corp*, 103 F3d 1180 (CA 4, 1997), submitted as supplemental authority by E & Y-Canada. Analyzing these cases together, it is apparent that the mere fact that it is foreseeable that an audit will be used by someone in a different forum is insufficient to subject the auditor to the jurisdiction of the different forum. However, where, as here, there is evidence that the auditors knew the purpose of the audit, knew what the client planned to do with the audit, knew the existence of a third party (the IC), and that the

third party would be relying upon the audit, personal jurisdiction may be appropriately exercised.

V

CONCLUSION

For all the foregoing reasons, we uphold and affirm the trial court's judgment that its exercise of jurisdiction over E & Y-Canada satisfies Michigan's long-arm statute[8] and the Due Process Clause of the United States Constitution.

Affirmed and remanded for further proceedings. We do not retain jurisdiction.

M. D. SCHWARTZ, J., concurred.

JANSEN, P.J. *(dissenting)*. I respectfully dissent. I disagree with the majority's conclusion that defendant[1] had sufficient minimum contacts with Michigan to support assertion of limited personal jurisdiction. I would hold that the exercise of limited personal jurisdiction in this case constitutes a violation of the Due Process Clause, US Const, Am XIV. Consequently, I would reverse the order of the trial court.

Our Supreme Court has stated that the constitutional inquiry in this regard is whether the defendant purposefully established minimum contacts in the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Witbeck v Bill Cody's Ranch Inn*, 428 Mich 659, 666; 411 NW2d 439 (1987), citing *Int'l*

---

[8] MCL 600.725; MSA 27A.725 (limited personal jurisdiction over a partnership).

---

[1] In this opinion, defendant will refer solely to Ernst & Young-Canada because it is the only defendant involved in this appeal.

*Shoe Co v Washington,* 326 US 310, 316; 66 S Ct 154; 90 L Ed 95 (1945). In determining whether sufficient minimum contacts exist between a defendant and Michigan to support Michigan's exercise of limited personal jurisdiction, the court is to apply a three-pronged test. First, the defendant must have purposefully availed itself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this state's laws. Second, the cause of action must arise from the defendant's activities in the state. Third, the defendant's activities must be so substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable. *Starbrite Distributing, Inc v Excelda Mfg Co,* 454 Mich 302, 309; 562 NW2d 640 (1997), citing *Jeffrey v Rapid American Corp,* 448 Mich 178, 186; 529 NW2d 644 (1995). I would hold that the facts of this case do not support a finding of sufficient minimum contacts to assert personal jurisdiction over defendant.

First, I do not find that defendant purposefully availed itself of the privilege of conducting activities in Michigan. Our Supreme Court has stated that the defendant's own conduct with the forum must be examined in order to determine whether the defendant should reasonably anticipate being haled into court there. *Id.,* p 187. The unilateral acts of unrelated third parties may not be used to justify the imposition of personal jurisdiction. *Id.* The requirement of purposeful availment ensures that a partnership will not be subjected to jurisdiction on the basis of random, fortuitous, or attenuated contacts. *Id.*

The facts of this case indicate that defendant's contacts with Michigan are attenuated. In fact, defendant's contacts with Michigan are almost nonexistent.

Defendant is a partnership of Canadian chartered accountants based in Toronto, Ontario. Defendant audited the consolidated financial statement of Confederation Life Insurance Company (CLIC) in 1991, 1992, and 1993. Defendant has no physical presence in Michigan: it has no employees or property in Michigan, has never done business in Michigan, and has provided no auditing or accounting services in Michigan. Additionally, CLIC is a mutual insurance company organized in Canada, with its principal place of business in Canada, although it did business throughout the United States and the United Kingdom as well. CLIC is a Canadian company regulated by Canadian insurance authorities. Michigan is merely CLIC's state of entry into the United States, but this does not make even CLIC a Michigan resident.

More importantly, the question regarding the foreseeability of defendant's audits being relied upon in Michigan is not sufficient to create the proper exercise of limited personal jurisdiction. Forseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause. *World-Wide Volkswagen Corp v Woodson*, 444 US 286, 295; 100 S Ct 559; 62 L Ed 2d 490 (1980). Rather, it is the defendant's conduct and connection with the forum state that must be such that the defendant should reasonably anticipate being haled into court there. *Id.*, p 297. Indeed, defendant never directly sent any of its audit reports or opinions to anyone in Michigan. Thus, the audit reports did not create any special relationship or contact with Michigan. Our Supreme Court's decision in *Khalaf v Bankers & Shippers Ins Co*, 404 Mich 134; 273 NW2d 811 (1978),

is particularly instructive on this point. The Court in *Khalaf*, pp 145-146, stated:

> Proof alone that a nonresident caused an effect in Michigan that was foreseeable does not establish a relationship to Michigan such as to make it fair and reasonable to subject the nonresident to jurisdiction. A nonresident insurance agent is not subject to long-arm jurisdiction in an action for negligent procurement of insurance solely on evidence that i) he knows the insured may engage in activities outside the state in which the insured's activities are generally centered and the agreement to procure insurance was made and ii) he agreed to procure insurance which covered those activities.

Because defendant had no conduct or connection with Michigan, it could not reasonably anticipate being haled into court in this state.[2] Therefore, I would find that defendant did not purposefully avail itself of the benefits of Michigan law and had insufficient contacts with Michigan to sustain Michigan's assertion of personal jurisdiction over defendant.

With respect to the second and third prongs, neither of those has been met either. The cause of action did not arise from defendant's activities within this state because defendant conducted no activities within Michigan. Further, defendant having no activi-

---

[2] For other factually similar cases involving insufficient minimum contacts over foreign accountants, see, e.g., *General Electric Capital Corp v Grossman*, 991 F2d 1376, 1387-1388 (CA 8, 1993) (Canadian auditors did not have sufficient minimum contacts with Minnesota by sending a copy of a certification of net equity of the Canadian subsidiary of the Minnesota corporation to the parent's directors in Minnesota or by sending the Canadian subsidiary's financial statements to auditors in Minnesota); *Young v Federal Deposit Ins Corp*, 103 F3d 1180, 1190-1192 (CA 4, 1997) (Bahamian accounting firm did not have sufficient minimum contacts with South Carolina where it used information contained in a standard bank confirmation form submitted to a South Carolina bank to substantiate its audit of an insurance company's financial statement).

ties within Michigan, its activities are not so substantially connected with Michigan to make the exercise of jurisdiction reasonable.

Finally, at this juncture, I would note that plaintiff could bring suit against defendant in a Canadian forum. In fact, plaintiff is litigating issues against defendant in a proceeding in Ontario. Therefore, the fact that personal jurisdiction does not arise in Michigan does not mean that Michigan policyholders of CLIC are without legal recourse.

I would reverse the trial court's order denying defendant's motion for summary disposition that was based on lack of personal jurisdiction.